**VIRGINIA BEACH POLICEMEN'S BENEVOLENT ASSOCIATION, Robert Mathieson and Michael F. Gelardi, Joint Trustees of the Centurion Health and Welfare Benefit Plan, Plaintiffs,**

v.

**Robert REICH, Secretary of the United States Department of Labor, United States Department of Labor, Defendants.**

Civ. A. No. 2:93cv1170.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 22, 1995.

Michael T. Leibig, Zwerdling, Paul, Leibig, Kahn, Thompson & Driesen, P.C., Fairfax, VA, for plaintiffs, Virginia Beach Policemen's Benev. Ass'n and Robert Mathieson.

Wyatt B. Durrette, Jr., Arnold C. Moore, Jr., Durrette, Irvin, Lemons & Bradshaw, Richmond, VA, for plaintiff Michael F. Gelardi.

Michael A. Rhine, Asst. U.S. Atty., Norfolk, VA, Alexander Fernandez, U.S. Dept. of Labor, Office of Sol., Washington, DC, for defendants.

## OPINION AND FINAL ORDER

REBECCA BEACH SMITH, District Judge.

This matter comes before the Court on Plaintiffs' and Defendants' cross-motions for summary judgment. After oral argument from the parties, the case is ready for decision by the Court. For the reasons stated below, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motions for summary judgment.

### I. Factual and Procedural History

Plaintiff Virginia Beach Policemen's Benevolent Association ("PBA") is a labor union established to support Virginia Beach police officers. Plaintiffs Robert Mathieson and Michael Gelardi are joint trustees of the Centurion Health and Welfare Benefit Plan ("Centurion Plan"), which is an employee health benefit plan established by Ocean Breeze Festival Park, Inc. and PBA. In July of 1993, the Commonwealth of Virginia, by the State Corporation Commission, required the Centurion Plan to enter into a Consent Order with the Virginia Bureau of Insurance. Under the Consent Order, the Centurion Plan voluntarily agreed not to enroll any new participants with certain limited exceptions

until it obtained a definitive Advisory Opinion from the United States Department of Labor that the Centurion Plan was a multiple employer welfare arrangement ("MEWA") established or maintained pursuant to a collective bargaining agreement under ERISA section 3(40)(A)(i).[1] The Centurion Plan seeks this Advisory Opinion in order to escape stringent state regulation.

On December 17, 1992, representatives of the Centurion Plan requested an Advisory Opinion from the Secretary of Labor. The Virginia Bureau of Insurance, in a separate letter, also conveyed the Centurion Plan's request to the Secretary. The Secretary, by Robert J. Doyle, Director of the Office of Regulations and Interpretations of the Welfare Benefits Administration, responded that the Department of Labor was not prepared to make a finding at that time. Doyle Decl. ¶ E.

Several months later, in June 1993, in response to a letter from Congressman Owen Pickett, the Department of Labor commented that it had decided not to rule on whether specific plans were established or maintained under collective bargaining agreements. More than a year later, in response to an inquiry from Senator Charles Robb, the Department of Labor added that it intended to develop regulations to address whether a particular plan was established or maintained pursuant to a collective bargaining agreement.[2] Since the Department's

1. ERISA section 3(40)(A)(i) provides:
   (A) The term 'multiple welfare employer arrangement' means an employee welfare benefit plan or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries, except that such term does not include any such plan or other arrangement **which is established or maintained—**
   **(i) under or pursuant to one or more agreements which the Secretary finds to be collective bargaining agreements,**
   29 U.S.C. § 1002(40)(A)(i) (1988) (emphasis added).

2. Essentially, the extension of the Centurion Plan's benefits to associate members has engendered this controversy. The Secretary of Labor, who, under the Consent Order, is authorized to

remove the Centurion Plan from the scope of state regulation by means of an Advisory Opinion, has refused to evaluate the facts concerning the collective bargaining status of the Centurion Plan. As a general principle, the Department of Labor has maintained that the presence of associate members would not affect the Secretary's determination as to whether a MEWA fits the collective bargaining agreement exception under ERISA section 3(40)(A)(i). Pension and Welfare Benefits Admin., U.S. Dep't of Labor, Multiple Employer Welfare Arrangements Under the Employee Retirement Income Security Act: A Guide to Federal and State Regulation 34 (1991). However, the Secretary of Labor has also expressed dissatisfaction with the ability of MEWAs with associate members to utilize the collective bargaining exception. S.Rep. No. 102-262, 102d Cong., 2d Sess. 14–15 n. 33 (1992). Essentially, the Secretary's unwillingness to address the question posed by the Centurion Plan operates as a *de facto* refusal to grant the collective bargain-

above responses, the Department of Labor formally announced its intention to publish a notice of proposed rulemaking in March of 1995.[3] 59 Fed.Reg. 57,800 (Nov. 14, 1994) (Unified Agenda). Mr. Doyle, as representative of the Department of Labor, has attested to the Department of Labor's intent to promulgate these regulations. Doyle Decl. ¶ C.

On December 3, 1993, Plaintiffs PBA, Mathieson, and Gelardi as well as Ocean Breeze Festival Park, Inc. and the Centurion Health and Welfare Benefit Plan[4] sued the United States Secretary of Labor, Robert Reich, and the United States Department of Labor in order to have the Secretary of Labor label the Centurion Plan as a plan established or maintained pursuant to a collective bargaining agreement under ERISA section 3(40)(A)(i).[5] On February 11, 1994, Defendants moved to dismiss the original complaint based on lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and failure to state a claim under Fed.R.Civ.P. 12(b)(6). This Court addressed and granted that motion in *Ocean Breeze Festival Park, Inc. v. Reich,* 853 F.Supp. 906 (E.D.Va.1994).

Proper Plaintiffs PBA, Mathieson, and Gelardi subsequently filed an Amended Complaint in which they seek (1) a declaratory judgment that the Centurion Plan is established or maintained pursuant to a collective bargaining agreement; (2) a writ of mandamus ordering the Secretary of Labor to determine that the Centurion Plan is established or maintained pursuant to a collective bargaining agreement; and (3) a mandatory injunction that would require the Secretary of Labor to make the above determination.

Defendants have moved to dismiss the Amended Complaint because they argue that Plaintiffs have neither a claim under the Administrative Procedure Act nor a mandamus remedy. According to Defendants, as result of Plaintiffs' lack of these two remedies, Plaintiffs cannot pursue declaratory relief. Because Plaintiffs have responded to Defendants' motion with additional materials and because Defendants have had ample opportunity to present matters outside the pleadings, the Court treats Defendants' motion to dismiss for failure to state a claim as a motion for summary judgment. Fed. R.Civ.P. 12(b).

In their motions for summary judgment, Plaintiffs claim that the Court has the power under the APA to compel the Secretary to make a determination, that a writ of mandamus is available, and that the Court should declare the Centurion Plan to be a plan established or maintained pursuant to a collective bargaining agreement. Defendants contest the ability of the Court to award any relief to Plaintiffs.[6]

## II. Standard of Review

The court may grant summary judgment on an issue only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court reviews the record as a whole and in the light most favorable to

ing agreement exception to the Centurion Plan. Although the Secretary has not disclosed whether the presence of associate members in the Centurion Plan has caused him to refrain from making an individual determination for the Centurion Plan, the Secretary's motivation behind this refusal does not affect the Court's resolution of the matters presented in this case.

3. As of the date of this decision, no rulemaking has appeared in the *Federal Register.*

4. Ocean Breeze Festival Park, Inc. and the Centurion Health and Welfare Benefit Plan have been dismissed by the Court as improper plaintiffs under ERISA § 502(k), 29 U.S.C. § 1132(k). *Ocean Breeze Festival Park, Inc. v. Reich,* 853 F.Supp. 906 (E.D.Va.1994).

5. *See supra* n. 1. for text of statute.

6. The parties also dispute the scope of the Secretary's finding in ERISA section 3(40)(A)(i). Defendants claim, if the Secretary is required to make a finding, the finding need only address whether an agreement is collectively bargained. Instead, Plaintiffs seek to command the Secretary to answer whether the Centurion Plan is *established or maintained under or pursuant to a* collective bargaining agreement, because such a finding will furnish the desired relief from state regulation. This distinction is immaterial. Because the Secretary need not make a finding, *see infra* part II.B.2., the Court need not address the parties' semantic dispute.

the nonmoving party; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2521, 91 L.Ed.2d 202 (1986).

Plaintiffs PBA and Mathieson have submitted a "Statement of Facts Not in Dispute." The Court construes this statement as if it were a portion of Plaintiffs' brief in support of their motion for summary judgment. Defendants have stated several objections to Plaintiffs' characterization of the facts contained in the Statement of Facts Not in Dispute.

Although the Court need not address all the particulars of the statement, one of the objections raised by Defendants warrants attention. Defendants specifically object to paragraph 16, which states, "On January 19, 1993, representatives of Centurion met with the Department of Labor and were told by Department of Labor representatives that an appropriate opinion letter would be forthcoming." Whether the Department of Labor told Centurion Plan representatives that an Advisory Opinion would be forthcoming does not affect the Court's decision as to whether the Plaintiffs are entitled to such an opinion. The pleadings, affidavits, and exhibits before the Court indicate that the Secretary of Labor does not intend to give the Centurion Plan an individual Advisory Opinion. Doyle Decl. ¶ E. The documents before the Court also indicate that the Secretary has announced his intention to promulgate a regulation which would guide the determination of whether a MEWA falls under the collective bargaining agreement exception. Consequently, the material facts regarding the Secretary's position toward the Centurion Plan's request for an Advisory Opinion are uncontested. As a result, the Court resolves as a matter of law whether Plaintiffs have a right to injunctive, mandamus, or declaratory relief.

## III. Discussion

### A. Administrative Procedure Act

Plaintiffs contend that, under the APA, they are entitled to judicial review of the Secretary's refusal to issue an Advisory Opinion addressing whether the Centurion Plan is a plan established or maintained under a collective bargaining agreement. Generally, a party can obtain judicial review of agency action. *See* 5 U.S.C. § 702. Any person "adversely affected or aggrieved by agency action," is entitled to judicial review, as long as the action is a "final agency action for which there is no other adequate remedy in court." 5 U.S.C. §§ 702, 704.

■ Defendants maintain that judicial review is precluded both because the Secretary's failure to make a determination is not a "final agency action" and because the Secretary's issuance of a determination is a discretionary act not subject to judicial review. Under the APA, a court cannot engage in judicial review if the agency action is committed to agency discretion by law. 5 U.S.C. § 701(a)(2). The exception in 5 U.S.C. § 701(a)(2) applies if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). Only after a party clears the "final agency action" and "committed to agency discretion" hurdles of judicial review, may a reviewing court "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

### 1. Final Agency Action

■ The parties disagree as to whether the Secretary has taken "final agency action" as defined under 5 U.S.C. section 704 for purposes of determining whether the Court can issue an injunction under the APA. The following factors may affect whether agency action is final:

(1) whether the action is a definitive statement of the agency's position;

(2) whether the action had the status of law and immediate compliance with its terms was expected;

(3) whether the action had a direct impact on the day-to-day business of plaintiff; and

(4) whether pre-enforcement challenge was calculated to speed enforcement and prevent piecemeal litigation.

*Natural Resources Defense Council v. EPA,* 16 F.3d 1395, 1407 (4th Cir.1993) (citing *FTC v. Standard Oil Co.,* 449 U.S. 232, 239–240, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980)). The finality element in 5 U.S.C. section 704 is interpreted in a pragmatic and flexible way. *Eastman Kodak Co. v. Mossinghoff,* 704 F.2d 1319, 1322 (4th Cir.1983); *see Standard Oil Co.,* 449 U.S. at 239–40, 243, 101 S.Ct. at 493, 494.

■ Regarding the first factor, the Secretary claims that he has not taken a definitive position on making a finding for the Centurion Plan. Actually, the Secretary's actions demonstrate a refusal to make individual findings. In his deposition, Mr. Doyle stated that, around 1991, the Department of Labor determined that it would not make individual findings regarding the collective bargaining agreement exception. Depo. at 167–68. In a letter to Congressman Owen Pickett, the Secretary declared that he did not intend to make an individual finding for the Centurion Plan.

Despite the Secretary's refusal to make an individual finding, the Secretary has published, as part of its Unified Agenda, his intention to promulgate a regulation of general application to guide his determination under ERISA section 3(40)(A)(i). 59 Fed.Reg. 57,-800 (Nov. 14, 1994); *see Abbott Lab. v. Gardner,* 387 U.S. 136, 151, 87 S.Ct. 1507, 1516, 18 L.Ed.2d 681 (1967)[7] (definitive regulation is one that is promulgated in a formal manner).

ERISA section 3(40)(A)(i) does not specify the type of finding, either case by case or by class, that the Secretary has authority to make. Further, ERISA section 505 allows the Secretary to promulgate regulations when necessary. 29 U.S.C. § 1135. At this stage, the Secretary's mere intention to develop a regulation does not undermine the fact that the Secretary has consistently refused to make individual rulings.[8] Yet, because of the flexible nature of the factors used to determine final agency action, the Court continues its inquiry.

Regarding the second factor, Plaintiffs have claimed that the Secretary's position has improperly subjected the Centurion Plan to state regulation. The Supreme Court has stated that when an agency refuses to act, it does not use its *coercive* power over an individual's liberty or property rights. *Heckler v. Chaney,* 470 U.S. at 832, 105 S.Ct. at 1656 (emphasis in original). The Secretary's position does not subject the Centurion Plan to new laws or regulations; it has simply continued state regulation over the Centurion Plan under ERISA section 514(b)(6)(A), 29 U.S.C. § 1144(b)(6)(A). *See Natural Resources Defense Council,* 16 F.3d at 1407. Only the imposition of the Consent Order by the Virginia Bureau of Insurance has required immediate compliance of the Centurion Plan.

7. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) held that the APA does not provide an independent grant of jurisdiction. This holding reversed the position of the Supreme Court in *Abbott Laboratories,* 387 U.S. at 136, 87 S.Ct. at 1507, on independent jurisdiction under the APA. However, the Supreme Court's holding in *Califano,* 430 U.S. at 99, 97 S.Ct. at 980, does not affect this Court's reliance on the concept of "definitive regulation" contained in *Abbott Laboratories,* 387 U.S. at 151, 87 S.Ct. at 1516.

8. The fact that the Secretary has issued a statement of intent in the *Federal Register* to promulgate a regulation addressing this question ostensibly favors a finding that the Secretary has not yet taken final agency action. The Supreme Court has held "a regulation promulgated in a formal manner after notice and evaluation of submitted comments is a "final agency action" under § 10 of the Administrative Procedure Act 5 U.S.C. § 704." *Abbott Lab. v. Gardner,* 387 U.S.

at 151, 87 S.Ct. at 1516. By corollary, when an agency is acting to promulgate a regulation, there is no final agency action. *See Citizens for a Better Env't v. Costle,* 617 F.2d 851, 853 n. 5 (D.C.Cir.1980); *see also Taylor–Callahan–Coleman Counties Dist. Adult Probation Dep't v. Dole,* 948 F.2d 953, 960 (5th Cir.1991) ("The fact that the rulemaking is proceeding at a pace too slow to suit the [plaintiff] in this matter does not make such bureaucratic sloth final agency action...."). The Secretary's statement of intent indicates that a regulation would be forthcoming in March 1995; however, this statement of intent is somewhat discredited by the fact that it appeared almost a year after this litigation began and by the fact that no such regulation has been issued as of the date of this opinion. Therefore, the Court analyzes the factors affecting whether the Secretary's inaction is final agency action without considering the impact of the Secretary's statement of intent appearing in the *Federal Register.*

Regarding the third factor, Plaintiffs assert that the Secretary's failure to make a determination has prevented the Centurion Plan from expanding its insurance coverage in Virginia. Under the Consent Order with the Commonwealth of Virginia, Plaintiffs cannot accept any new members, with certain limited exceptions, unless the Centurion Plan obtains the requisite Advisory Opinion from the Secretary. Valerie Wilkinson, an employee of the Centurion Plan, attests that she spends 50% of her time addressing problems arising from the Secretary's refusal to render an Advisory Opinion. Wilkinson Aff. Wilkinson also states that because of the Consent Order, other states have asserted control over the Centurion Plan. *Id.* However, even assuming that Plaintiffs have demonstrated that the Centurion Plan has experienced losses under state regulation, Plaintiffs must connect their loss to the actions of the Secretary.

The Commonwealth of Virginia, not the Secretary, has directly imposed the Advisory Opinion as a condition of the Consent Order. The Consent Order permits the Centurion Plan to exist under state law like other ME-WAs, even though the costs of compliance at the state level may exceed the costs of compliance solely with federal measures. Because the Secretary has simply maintained the status quo, his refusal to issue an Advisory Opinion has not directly jeopardized the daily operation of Plaintiffs' business.

Regarding the fourth factor, if the Court orders the Secretary to make an individual finding for the Centurion Plan, that result would encourage other MEWAs seeking similar determinations to pursue judicial remedies. Instead, if the Court allows the Secretary to address the ERISA section 3(40)(A)(i) exception through a formal regulation or to subject all MEWAs to state regulation, then those MEWAs pursuing the collective bargaining exception may more easily determine whether they qualify for the exception without seeking a time-consuming individual determination. This latter course promotes enforcement of ERISA by discouraging litigation and possibly utilizing the effectiveness of a rulemaking of general application. Consistent with the pragmatic, flexible interpreta-

tion, these factors foreclose judicial review of the Secretary's inaction.

### 2. Discretionary Nature of the Secretary's Determination

In addition to the Court's finding that the Secretary's inaction is not final agency action, the Court also considers whether the discretionary nature of the Secretary's decision would preclude judicial review. Plaintiffs contest whether the Secretary's failure to make a determination under ERISA section 3(40)(A)(i) is discretionary. Defendants maintain that the discretionary nature of the Secretary's determination precludes judicial review under 5 U.S.C. § 701(a)(2).

If an act is committed to agency discretion by law, then a court cannot review that action. 5 U.S.C. § 701(a)(2). Therefore, the Court must determine whether an act or the failure to act is committed to agency discretion before it can engage in judicial review of agency action. *See Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985) (agency's decision not to take an enforcement action should be presumed to be immune from judicial review under APA section 701(a)(2)); *Collins Music Co. v. United States*, 21 F.3d 1330 (4th Cir. 1994) (extension of *Chaney* principle to IRS's failure to promulgate certain tax classification regulations). In *Ocean Breeze*, the Court, in the context of its discussion of potential jurisdiction under the Mandamus Act, declared, "the statutory language upon which plaintiffs rely [ERISA section 3(40)(A)(i) ] gives the Secretary broad discretion to determine whether to make a decision, as well as to determine the content of that decision." 853 F.Supp. at 916. Plaintiffs assert that the Court's statement in *Ocean Breeze* arose in the context of the discussion on mandamus and does not apply to the Secretary's decision under the APA. Because the issue of whether the Secretary's finding under ERISA section 3(40)(A)(i) is committed to agency discretion presents a question of first impression, the Court reexamines this issue. The Court considers whether the Secretary's finding is discretionary, and, if so, whether it is "committed to

agency discretion" under 5 U.S.C. section 701(a)(2).

### a. Interpretation of ERISA section 3(40)(A)(i)

To determine whether the Secretary's finding is discretionary, the Court first examines the language of ERISA section 3(40)(A)(i), 29 U.S.C. § 1002(40)(A)(i). *See In re Maxway,* 27 F.3d 980 (4th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 580, 130 L.Ed.2d 495 (1994); *accord Baltimore Gas & Elec. Co. v. Heintz,* 760 F.2d 1408, 1413 (4th Cir.), *cert. denied,* 474 U.S. 847, 106 S.Ct. 141, 88 L.Ed.2d 116 (1985). That section provides: "multiple employer welfare arrangement . . . does not include any such plan or other arrangement which is established or maintained—(i) under or pursuant to one or more agreements *which the Secretary finds to be collective bargaining agreements . . . .*" 29 U.S.C. § 1002(40)(A)(i) (emphasis added). The "which the Secretary finds" language, underscored above, neither explicitly compels the Secretary to make a determination nor explicitly imparts the Secretary with broad discretion whether and how to make a determination.[9]

This ambiguous language leads the Court to consider the legislative intent behind the enactment of ERISA section 3(40)(A)(i). *See Heintz,* 760 F.2d at 1413. Contemporaneous committee reports may reveal congressional intent. *See Costello v. Agency for Int'l Dev.,* 843 F.2d 540 (D.C.Cir. 1988) (citing *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960)). However, committee reports that appeared after the passage of a statute do not evidence legislative intent, because those reports could represent both congressional intent to change the law and a confirmation of the original intent of the enacting Congress. *Costello,* 843 F.2d at 545 n. 14. Even in congressional committee hearings contemporaneous with a legislative enactment, no significance attaches to statements made by someone not a member of Congress or to statements not included in official reports. *Kelly v. Robinson,* 479 U.S. 36, 51 n. 13, 107 S.Ct. 353, 361 n. 13, 93 L.Ed.2d 216 (1986). Moreover, the Conference Report, because it represents the final statement of terms by both houses of Congress, provides the most persuasive authority besides the language of the statute in determining congressional intent. *Davis v. Lukhard,* 788 F.2d 973, 981

9. Plaintiffs rely on *United States v. Markgraf,* 736 F.2d 1179 (7th Cir.1984), *cert. dismissed,* 469 U.S. 1199, 105 S.Ct. 1154, 84 L.Ed.2d 308 (1985), and *United Hospital Center, Inc. v. Richardson,* 757 F.2d 1445 (4th Cir.1985) for the proposition that the Court should interpret ERISA section 3(40)(A)(i) as requiring a finding by the Secretary of Labor. In *Markgraf,* the United States Secretary of Agriculture commenced a foreclosure action against mortgagors who had received a loan from the Farmer's Home Administration. 736 F.2d at 1181. The Seventh Circuit, in addressing whether the Secretary of Agriculture had to implement 7 U.S.C. § 1981(a), interpreted precatory language as expressing an obligatory function. *Markgraf,* 736 F.2d at 1182. The Seventh Circuit further specified that, although the word "may" gives the Secretary some discretion, it does not provide absolute discretion. *Id.* In *United Hospital Center, Inc.,* four West Virginia hospitals sought to enjoin enforcement of certain sections of the West Virginia Code by arguing that those sections were unconstitutional. 757 F.2d at 1448. Like the Seventh Circuit in *Markgraf,* the Fourth Circuit in *United Hospital Center, Inc.* treated the precatory language of the West Virginia statute

as mandatory. *United Hosp. Ctr., Inc.,* 757 F.2d at 1448.

Like the courts in *Markgraf* and *United Hospital Center, Inc.,* this Court analyzes the language and then the legislative history in interpreting the statute at issue. *See Markgraf,* 736 F.2d at 1183 (analyzing statute based on language, legislative history, and agency interpretation); *United Hosp. Ctr., Inc.,* 757 F.2d at 1453 (analyzing statute based on language, legislative history, and context of the statute). However, just because the courts in *Markgraf* and *United Hospital Center, Inc.* concluded that the precatory language signified mandatory acts, the findings of those courts do not compel this Court to reach the same conclusion without engaging in an analysis specifically tailored to ERISA section 3(40)(A)(i). Further, Plaintiffs have not demonstrated that the statutes involved in those sections grammatically or linguistically resemble the statutes analyzed in *Markgraf* and *United Hospital Center, Inc. See Markgraf,* 736 F.2d at 1182; *United Hosp. Ctr., Inc.,* 757 F.2d at 1448. Simply, ERISA section 3(40)(A)(i) contains neither the word "may" nor the word "shall"; consequently, the constructions in *Markgraf* and *United Hosp. Ctr., Inc.* provide no guidance in interpreting the language of ERISA section 3(40)(A)(i).

(4th Cir.), *cert. denied,* 479 U.S. 868, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986).

■ The 1974 version of ERISA generally preempted state regulation of employee benefit plans. ERISA § 514(a), 29 U.S.C. § 1144(a); *see also Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983) (explaining general preemption under ERISA). Notwithstanding its expansive preemption provisions, ERISA currently permits the states to regulate insurance matters. ERISA § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A)[10]. However, ERISA further preempts state regulation by providing that:

> Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

10. 29 U.S.C. § 1144(b)(2)(A) provides:
    Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

11. An employee welfare benefit plan is defined at 29 U.S.C. § 1002(1) as
    any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

ERISA § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B). Under ERISA, the term "employee benefit plan" includes employee welfare benefit plans[11], employee pension benefit plans, and plans which are combinations of the two. ERISA § 3(3), 29 U.S.C. § 1002(3).

After the enactment of ERISA, Multiple Employer Trusts ("METs") sought classification as "employee benefit plans" to escape state regulation and to operate under the more lenient federal requirements. *Oversight Investigation of Certain Multiple Employer Health Insurance Trusts (METs), Evading State and Federal Regulation: Hearing Before the Subcomm. on Labor–Management Relations of the House Comm. on Educ. and Labor,* 97th Cong., 2d Sess. (1982) [hereinafter *Oversight Investigation* ]. METs, as employee benefit plans, could operate within a state without adhering to that state's requirements for insurance companies. *Id.* This misuse of the system by METs fueled the enactment of ERISA section 3(40)(A)(i), which defines a new type of employee benefit plan, the multiple employer welfare arrangement or MEWA, and ERISA section 514(b)(6)(A), which subjects MEWAs to state regulation. *See Oversight Investigation* at 2.

ERISA section 3(40)(A)(i) originated as H.R. 6462.[12] 128 Cong.Rec. 11395 (May 21,

12. The original bill, labelled the Multiple Employer Welfare Arrangement Act of 1982, provided:

    **Definition of Multiple Employer Welfare Arrangement**
    Sec. 2. Section 3 of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1002), relating to definitions, is amended by adding at the end thereof the following new paragraph:
    "(40) The term "multiple employer welfare arrangement" means an employee welfare benefit plan, or any other arrangement (other than an employee welfare benefit plan), which is established or maintained for the purpose of offering or providing any benefit described in paragraph (1) to the employees of two or more employers (including one or more self-employed individuals), or to their beneficiaries, except that such term does not include any such plan or other arrangement which is established or maintained under or pursuant to one or more agreements which the Secretary finds to be collective bargaining agreements.
    128 Cong.Rec. 11395, 11397 (May 21, 1982) (remarks by Rep. Erlenborn).

1982) (remarks by Rep. Erlenborn). In support of H.R. 6462, a bill to address the avoidance of state regulation by METs, its co-sponsor, Congressman Burton, stated,

> Although the Employee Retirement Income Security Act of 1974 [ERISA] was enacted to protect workers, some individuals have used ERISA as a smokescreen to conceal fraudulent activities.
>
> These individuals approach employers, particularly small businesses, offering a cheaper alternative to traditional group health insurance coverage.
>
> They set up trusts which they administer themselves to provide health coverage. But unlike licensed insurance carriers, they often fail to comply with the basic solvency controls which each State establishes to protect health care consumers.
>
> When the State tries to enforce these controls, the trusts claim to be beyond the reach of State law because they are "employee benefit plans" covered by Federal law.
>
> But by the time the U.S. Department of Labor decides if Federal law applies, the individuals who established the bogus insurance ventures have long since departed with the money and workers are left without any means of covering their unpaid medical bills.
>
> The bill before us today, H.R. 6462, clarifies and strengthens the ability of the States to protect their citizens from such unscrupulous individuals *by giving the States clear authority to establish and enforce standards for METs.*

*Legislative Hearing on Pension Issues, Hearing Before the Subcomm. on Labor–Management Relations of the House Comm. on Educ. and Labor,* 97th Cong., 2d Sess. 1–2 (1982) (statement of Rep. Burton) (emphasis added) [hereinafter *Pension Issues*]. Congressman John Erlenborn, the other sponsor of the bill, stated, the proposed definition "is consistent with the original intent of Congress in excluding those Multiple employer welfare arrangements which do not meet the 'employee welfare benefit plan' definition from the scope of the coverage and preemption provisions of ERISA." 128 Cong.Rec. 11395, 11396 (May 21, 1982) (remarks by Rep. Erlenborn). According to Congressman Erlenborn, "[a]ny such arrangement which is established or maintained under or pursuant to one or more collective bargaining agreements is excluded from the scope of the term [MEWA]." *Id.*

During the legislative process, the provision defining "multiple employer welfare arrangement" became part of H.R. 5470 and eventually P.L. 97–473, while the other portions of H.R. 6462 were eliminated from congressional consideration. *Compare* Pub.L. No. 97–473, 96 Stat. 2605, 2612 (1982) (codified at 29 U.S.C. § 1002(40)); *with Pension Issues* at 5; 128 Cong.Rec. 11395, 11397 (May 21, 1982). In support of the definition of MEWA as an amendment to H.R. 5470, the statement accompanying the House Conference Report provides:

> The provision *generally* exempts certain multiple employer welfare arrangements from the ERISA preemption provision. Under the provision, a multiple employer welfare arrangement is any plan or other arrangement established to offer welfare benefits, such as health insurance, to the employees of two or more employers. However, it continues preemption with respect to State law applying to any plan maintained pursuant to a collective bargaining agreement or maintained by a tax exempt rural electric cooperative.

H.R.Conf.Rep. No. 97–984, 97th Cong., 2d Sess. 19 *reprinted in* 1982 U.S.C.C.A.N. 4580, 4604 (emphasis added).

Consequently, the Court finds that the legislative history focuses on the ability of the states to regulate MEWAs and that the legislative history does not require the Secretary of Labor to make a finding under the collective bargaining exception. Specifically, committee hearings preceding passage of the bill concentrate on addressing the abuses of METs. *See Pension Issues* at 1–2. Also, at least one court of record has acknowledged that the congressional intent behind ERISA section 3(40)(A)(i) focuses on permitting state regulation of MEWAs. *See Hill v. Association of Small Business Employees,* 824 F.Supp. 955, 960 (D.Colo.1992). Importantly, the final conference report does not even mention a role for the Secretary in making

determinations for the continuation of pre-emption with respect to state law. H.R.Conf.Rep. No. 97–984, 97th Cong., 2d Sess. 19 *reprinted in* 1982 U.S.C.C.A.N. 4580, 4604.

The Court rejects Plaintiffs' argument that congressional intent to provide an escape hatch from state regulation for MEWAs takes precedence over congressional intent to permit state regulation of MEWAs. Although recent congressional hearings have recognized the problem faced by MEWAs seeking to escape state regulation and the need for some type of certification process by the Secretary, those hearings did not influence congressional intent behind the enactment of ERISA section 3(40)(A)(i). *See Permanent Subcomm. on Investigation, United States Gov't Efforts to Combat Fraud and Abuse in the Insurance Industry, Interim Report on Combatting Fraud and Abuse in Employer Sponsored Health Benefits Plans,* S.Rep. No. 102–262, 102d Cong., 2d Sess. (Mar. 12, 1992). Plaintiffs' quandary can only be addressed properly through curative legislation and not through judicial review. *See Sierra Club v. Larson,* 882 F.2d 128, 133 (4th Cir.1989).

It is clear that, through ERISA section 3(40)(A)(i), Congress intended to promote state regulation of MEWAs. The Court finds that, consistent with the legislative history, only if the Secretary chooses to make a finding, would a MEWA receive exemption from state regulation. This interpretation concurs with a feasible construction of the ambiguous language of the section.[13] Although the Court finds that the Secretary's

decision is discretionary, the Court must consider whether the Secretary's decision is "committed to agency discretion" within the meaning of 5 U.S.C. § 701(a)(2).

*b. Committed to Agency Discretion*

■ The Supreme Court has determined that an action is "committed to agency discretion" if the statute which controls that action is so narrowly drawn that it does not delineate a standard for the court to utilize in reviewing the action. *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985); *see Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); *see also Lincoln v. Vigil,* —— U.S. ——, ——–——, 113 S.Ct. 2024, 2030–31, 124 L.Ed.2d 101 (1993); *Webster v. Doe,* 486 U.S. 592, 599–600, 108 S.Ct. 2047, 2051–2052, 100 L.Ed.2d 632 (1988). The Fourth Circuit has addressed the exception contained in 5 U.S.C. § 701(a)(2). *See, e.g., Collins Music Co. v. United States,* 21 F.3d 1330 (4th Cir. 1994) (IRS' failure to promulgate classification regulations is committed to agency discretion); *Dorsey v. Housing Auth. of Baltimore City,* 984 F.2d 622 (4th Cir.1993) (HUD's monitoring role over the setting of allowances for Public Housing Authorities is committed to agency discretion); *Sierra Club v. Larson,* 882 F.2d 128 (4th Cir.1989) (Federal Highway Administration's and Department of Transportation's failure to enforce provisions of the Highway Beautification Act is committed to agency discretion). In *Collins Music Co.,* the plaintiff sued the Internal

---

**13.** In the absence of legislative history, a court may consider the interpretation given the statute by the agency charged with enforcing it. *Heintz,* 760 F.2d at 1414. In *Heintz,* the Fourth Circuit interpreted a section of the Maryland Code for which no legislative history existed. *Id.* By contrast, legislative history, although sparse, exists for ERISA section 3(40)(A)(i). Additionally, when an agency takes a position for purposes of litigation, the court need not defer to the agency's position interpreting the statute. *Monongahela Power Co. v. Reilly,* 980 F.2d 272, 279 (4th Cir.1992).

Even if the Court were to acknowledge the position taken by the Secretary, it would be difficult. The Secretary originally argued that ERISA section 3(40)(A)(i) granted him discretion both whether to make a finding and discretion as

to the content of that finding. This position corresponds with Mr. Doyle's deposition which states that sometime around 1991, the Secretary decided not to undertake individual findings regarding the collective bargaining agreement exception. Doyle Depo. at 167–68. However, in Defendants' response to Plaintiffs' motions for summary judgment, Defendants contend that although the statute requires a finding, a regulatory finding by class is permissible. In support of this new position, the Secretary of Labor has stated that he intends to publish a regulation addressing the criteria for finding whether a plan is established or maintained under a collective bargaining agreement. 59 Fed.Reg. 57,800. However, at the time of this decision, the Secretary has issued no such regulation.

Revenue Service because the Commissioner failed to promulgate a descriptive regulation. 21 F.3d at 1331. In concluding that the IRS' inaction was committed to agency discretion under 5 U.S.C. § 701(a)(2), the Fourth Circuit analogized the inaction of the IRS to the agency's failure to take enforcement steps in *Chaney*. *Collins Music Co.*, 21 F.3d at 1336. In *Collins Music Co.*, the Fourth Circuit ultimately determined that the precatory language and legislative history of the applicable section provided *no standard* by which the district court could review the IRS' inaction. *Id.* at 1335.

■ The fact that the Internal Revenue Code section at issue in *Collins Music Co.* used precatory language to describe the IRS' role does not necessarily distinguish *Collins Music Co.* from the case at bar. *See Collins Music Co.*, 21 F.3d at 1335. Even though ERISA section 3(40)(A)(i) does not contain precatory language, the Court has already determined that the language and legislative history of ERISA section 3(40)(A)(i) define a discretionary exercise of authority by the Secretary.[14] The determination that the Secretary of Labor's finding is discretionary, even in the absence of precatory language, does not provide a standard against which to evaluate the Secretary of Labor's refusal to make a finding.

Plaintiffs inappropriately look outside of the language and legislative history of ERISA section 3(40)(A)(i) for "law to apply" in reviewing the Secretary of Labor's failure to make a finding. *See Citizens of Overton Park, Inc.*, 401 U.S. at 410, 91 S.Ct. at 820; *Collins Music Co.*, 21 F.3d at 1335, 1337–38. Consequently, the Court rejects Plaintiffs' reliance on factors listed by the Department of Labor contained in one of its publications concerning MEWAs. *See* Pension and Welfare Benefits Admin., U.S. Dep't of Labor, Multiple Employer Welfare Arrangements Under the Employee Retirement Income Security Act: A Guide to Federal and State Regulation 34–35 (1991). The existence of collective bargaining factors does not affect whether the Secretary has an obligation to make a finding under ERISA section 3(40)(A)(i). *See id.* Additionally, although some courts have evaluated whether certain agreements are collective bargaining agreements under the Labor Management Relations Act § 301, 29 U.S.C. § 185, these cases do not supply "law to apply" in evaluating the Secretary's failure to make a finding under ERISA section 3(40)(A)(i). *See e.g. United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578–81, 80 S.Ct. 1347, 1350–52, 4 L.Ed.2d 1409 (1960); *Griesmann v. Chemical Leaman Tank Lines, Inc.*, 776 F.2d 66, 71 (3d Cir. 1985); *Kaylor v. Crown Zellerbach, Inc.*, 643 F.2d 1362, 1367 n. 2 (9th Cir.1981). Consequently, the Court finds that the Secretary's decision whether to make a finding under ERISA section 3(40)(A)(i) is committed to agency discretion and therefore unreviewable.

*3. Agency Abdication of Statutory Responsibility*

■ Plaintiffs assert that even if the Court finds that the Secretary's decision is committed to agency discretion, the Court can review the Secretary's total refusal to address the Centurion Plan's predicament. To support their argument, Plaintiffs PBA and Mathieson assert that the Secretary of Labor's inaction falls under the exception mentioned in *Heckler v. Chaney* footnote 4:

We do not have in this case a refusal by the agency to institute proceedings based solely on the belief that it lacks jurisdiction. Nor do we have a situation where it could justifiably be found that the agency has "consciously and expressly adopted a general policy" that is so extreme as to amount to an abdication of its statutory responsibilities. See, *e.g., Adams v. Richardson*, 156 U.S.App.D.C. 267, 480 F.2d 1159 (1973) (en banc). Although we express no opinion on whether such decisions would be unreviewable under § 701(a)(2), we note that in those situations the statute conferring authority on the agency might indicate that such decisions were not "committed to agency discretion."

*Heckler v. Chaney*, 470 U.S. at 833, 105 S.Ct. at 1656. No Supreme Court or Fourth Cir-

14. *See supra* part II.B.2.a.

cuit opinions have directly addressed this question which *Chaney* phrased, but left unresolved. *See id.* However, *Collins Music Co.* did confront a situation where an agency failed to act, but because that agency had no statutory duty to act, the Fourth Circuit viewed the failure to promulgate the regulation by the IRS as committed to agency discretion. Despite the fact that *Collins Music Co.* involved agency inaction, the Fourth Circuit did not characterize the issue as one implicating a "total abdication of statutory responsibility" under *Chaney* footnote 4, perhaps because the Fourth Circuit concluded that the IRS had no "statutory responsibility" to promulgate the regulation. As in *Collins Music Co.*, the exception mentioned in *Chaney* footnote 4 does not relate to the case at bar, because this Court finds that the Secretary of Labor has no "statutory responsibility" to abdicate under ERISA section 3(40)(A)(i). *See* 470 U.S. at 833, 105 S.Ct. at 1656.

Plaintiffs also argue that *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) controls this Court's determination. Plaintiffs cite the *Shaughnessy* case for the proposition that "discretionary agency actions are generally non-reviewable, however, acts tantamount to a refusal to exercise discretion are subject to judicial review." *Pueblo de Cochiti v. United States*, 647 F.Supp. 538, 542 (D.N.M.1986) (citing *Shaughnessy*, 347 U.S. at 268, 74 S.Ct. at 503). In *Shaughnessy*, the petitioner sought a writ of habeas corpus to prevent his impending deportation. 347 U.S. at 261, 74 S.Ct. at 500. Petitioner alleged that an announcement by the Attorney General that Petitioner was one of several "unsavory characters," prejudiced the Board of Immigration Appeals, which ultimately decided to deport the Petitioner. *Id.* at 262, 264, 74 S.Ct. at 500, 501. Because the applicable statute required the Board to make an independent decision, and because the supporting facts indicated that the Board merely adopted the position of the Attorney General, the Supreme Court granted the Petitioner a new hearing before the Board. *Id.* at 268, 74 S.Ct. at 503.

In *Shaughnessy*, the Board was endowed with discretion whether or not to deport the Petitioner, but the Board abdicated its discretion and adopted the position of the Attorney General. By contrast, in this case, the Secretary has not yet exercised his discretion to make a determination for the Centurion Plan. Further, the Secretary, unlike the Board in *Shaughnessy*, has discretion whether or not to make a finding, and therefore has not unreasonably refused to do so.

**B. Mandamus**

Plaintiffs seek to compel the Secretary of Labor through a writ of mandamus, to make a finding under ERISA section 3(40)(A)(i), 29 U.S.C. § 1002(40)(A)(i). Plaintiffs maintain that they have only requested that the Court compel the Secretary to make a finding and not to determine the content of the Secretary's finding. 28 U.S.C. § 1361 provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

"In order to meet the requirements for mandamus, [Plaintiffs] must show that they have 'a clear right to the relief sought,' that the [Secretary] 'has a clear duty to do the particular act requested,' and that 'no other adequate remedy is available.'" *National Ass'n of Gov't Employees v. Federal Labor Relations Auth.*, 830 F.Supp. 889, 898 (E.D.Va. 1993) (quoting *In re First Fed. Sav. & Loan Ass'n*, 860 F.2d 135, 138 (4th Cir.1988)). Plaintiffs must fulfill all three of these requirements before obtaining mandamus relief. *Cook v. Arentzen*, 582 F.2d 870, 876 (4th Cir.1978). The Supreme Court has ruled that a writ of mandamus remedy is, "a drastic one, to be invoked only in extraordinary circumstances." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980).

In this case, the Court has already addressed whether it could award mandamus relief. *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F.Supp. 906, 915–16 (E.D.Va. 1994). Although the Court in *Ocean Breeze*

found that Plaintiffs did not have a clear right to the relief requested, the Court grounded this finding on Plaintiffs' failure to establish jurisdiction under ERISA section 502(k), 29 U.S.C. § 1132(k). 853 F.Supp. at 916. Proper jurisdiction under ERISA requires that the suit be brought by a fiduciary, administrator, participant, or beneficiary of an employee benefit plan. 29 U.S.C. § 1132(k); *Ocean Breeze*, 853 F.Supp. at 916. The Court has already recognized that the trustees, Gelardi and Mathieson, are appropriate representatives of the participants of the Centurion Plan. *Ocean Breeze*, 853 F.Supp. at 911 n. 2. In their amended complaint, Plaintiffs have established jurisdiction under ERISA section 502(k) because they are a labor union and trustees of the Centurion Plan. Consequently, Plaintiffs have now demonstrated a clear right to the relief requested.

Plaintiffs must still fulfill the second requirement for mandamus relief, the requirement that the Secretary have a clear duty to do the act requested. "Mandamus against a public official will not lie unless the alleged duty to act involves a mandatory or ministerial obligation which is so plainly prescribed as to be free from doubt." *In re First Fed. Sav. & Loan Ass'n*, 860 F.2d at 138.

A plain reading of ERISA section 3(40)(A)(i) reveals neither a "clear duty" nor a mandatory obligation "free from doubt." Further, the Court has already reexamined the discretionary nature of the Secretary's finding.[15] Consequently, the Court reaffirms its earlier statement that, "[t]here is absolutely no language in the statute that established a clear duty, much less a positive command, on the part of the Secretary to make a finding that any plan is, or is not, established pursuant to a collective bargaining agreement." *Ocean Breeze*, 853 F.Supp. at 916.

Defendants claim that the Secretary has refused to act and that this refusal can be cured by mandamus relief. Mandamus is available "to compel action, when refused, in matters involving judgment and discretion,

[although] not to direct the exercise of judgment in a particular way...." *Wilbur v. United States*, 281 U.S. 206, 218, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930); *see also National Ass'n of Gov't Employees*, 830 F.Supp. at 898 ("total abdication of statutory responsibility" may merit award of mandamus relief). Although the Secretary has not determined whether the Centurion Plan is established or maintained under a collective bargaining agreement, this refusal does not qualify as a total abdication of statutory responsibility for purposes of issuing a writ of mandamus.[16] *See National Ass'n of Gov't Employees*, 830 F.Supp. at 898. The Court recognizes that the Department of Labor has not promptly answered the Centurion Plan's inquiry; however, the statute does not impose requirements or deadlines on the Secretary. The Court denies the extreme remedy of mandamus when the Secretary does not have a clear or plain duty under the statute to make a finding under ERISA section 3(A)(40)(i).

### C. Declaratory Relief

Finally, the parties contest whether this Court may provide a declaratory judgment in this case. Plaintiffs claim that ERISA section 502(k), 29 U.S.C. § 1132(k), provides a basis for subject matter jurisdiction in this case. Defendants claim that even though Plaintiffs may be proper parties under ERISA section 502(k), 29 U.S.C. § 1132(k), because Plaintiffs cannot compel the Secretary of Labor to take action under that section, declaratory relief is not available.

"[T]he Declaratory Judgment Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right." *Schilling v. Rogers*, 363 U.S. 666, 677, 80 S.Ct. 1288, 1296, 4 L.Ed.2d 1478 (1960) (citation omitted); *see Delavigne v. Delavigne*, 530 F.2d 598, 601 (4th Cir.1976). In *Ocean Breeze*, this Court recognized that proper plaintiffs were required to establish subject matter jurisdiction under ERISA section

---

**15.** *See supra* at part II.B.2.a. for a discussion of the discretionary nature of the Secretary's decision.

**16.** *See supra* part II.B.3.

502(k), 29 U.S.C. § 1132(k). 853 F.Supp. at 919. Now that the Amended Complaint contains proper Plaintiffs, the Court must decide whether ERISA section 502(k), 29 U.S.C. § 1132(k) or any other section submitted by Plaintiffs establishes a proper ground of jurisdiction.

In *Schilling,* the petitioner brought an action to obtain judicial review of an adverse administrative determination. 363 U.S. at 666, 80 S.Ct. at 1291. The act, under which the administrative determination was made, precluded review of administrative determinations made under the act. *Id.* at 670, 80 S.Ct. at 1292. In the case at bar, the Court has determined that judicial review of the Secretary's inaction is precluded. However, judicial review in this case is impeded not because ERISA specifically precludes judicial review, but because the Court found that the Secretary has not undertaken "final agency action" under the APA and because the Secretary's finding is committed to agency discretion under the APA.

ERISA section 502(k) addresses the jurisdiction of actions against the Secretary, and that section permits, "[s]uits by an administrator, fiduciary, participant, or beneficiary of an employee benefit plan ... to compel [the Secretary] to take action required under this subchapter." 29 U.S.C. § 1132(k). The Court has already examined the Secretary's finding under ERISA section 3(40)(a)(i), and its examination revealed that such a finding was discretionary and not compulsory.[17] Therefore, although Plaintiffs can bring their claim under ERISA section 502(k), 29 U.S.C. § 1132(k), because the Secretary need not make a finding, there is no independent basis of jurisdiction. *See Reich v. Valley Nat'l Bank,* 837 F.Supp. 1259, 1302 (S.D.N.Y.1993) (no judicial review of Secretary's failure to promulgate regulation).

In *Cutaiar v. Marshall,* 590 F.2d 523 (3d Cir.1979), a case cited by Plaintiff Gelardi with facts similar to the case at bar, the Third Circuit concluded that subject matter jurisdiction under the Declaratory Judgment Act requires an independent basis of jurisdiction. In *Cutaiar,* the Third Circuit found that trustees of an employee welfare benefit plan raised a justiciable controversy under the Declaratory Judgment Act in challenging the validity of an opinion letter issued by the Secretary of Labor. *Id.* However, in *Cutaiar,* jurisdiction was properly based under ERISA (29 U.S.C. § 1132(k)) and the APA (5 U.S.C. § 704). 590 F.2d at 527. Because the Secretary of Labor cannot be compelled to make a ruling on whether the Centurion Plan is established or maintained under a collective bargaining agreement under the APA, there is no jurisdictional basis for establishing declaratory relief.

## IV. Conclusion

There being no material facts in dispute, for the reasons articulated in this opinion, the Court does not award injunctive, mandamus, or declaratory relief to Plaintiffs PBA, Mathieson, and Gelardi. Accordingly, the Court GRANTS Defendants' motion for summary judgment and DENIES Plaintiffs' motions for summary judgment.

The Clerk is DIRECTED to send a copy of this Opinion and Final Order to all counsel of record.

It is so ORDERED.