**COLLINS MUSIC COMPANY, INC., Plaintiff–Appellant,**

**v.**

**UNITED STATES of America, Defendant–Appellee.**

No. 93–1441.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 28, 1993.

Decided April 15, 1994.

ARGUED: Curtis W. Stodghill, Dobson, Jones & Layman, P.A., Greenville, SC, for appellant. Frank Phillip Cihlar, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee. ON BRIEF: William H. Thomas, III, Dobson, Jones & Layman, P.A., Greenville, SC; David H. Wilkins, Cecil H. Nelson, Wilkins & Nelson, Greenville, SC, for appellant. Michael L. Paup, Acting Assistant Attorney General, Gary R. Allen, Richard Farber, J. Preston Strom, Jr., U.S. Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for appellee.

Before RUSSELL and HALL, Circuit Judges, and CLARKE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge DONALD RUSSELL wrote the opinion, in which Judge K.K. HALL and Senior Judge CLARKE joined.

## OPINION

DONALD RUSSELL, Circuit Judge:

Collins Music Company, Inc. ("Collins") appeals a decision of the United States District Court for the District of South Carolina, holding that, under the Internal Revenue Code of 1954, as amended by the Economic Recovery Tax Act of 1981 ("ERTA"), Pub.L. No. 97–34, 95 Stat. 172, costs expended to purchase coin-operated video games were recoverable over a five-year period, and not over a three-year period as Collins had contended. We affirm.

### I.

The relevant facts are not in dispute. Collins is a South Carolina corporation in the business of providing coin-operated amusement games, including video games, to the public. Collins enters into agreements with business establishments to locate equipment at the establishments and to service the equipment. Revenue from the equipment is divided between Collins and the owners of the establishments.

Prior to the enactment of ERTA, during the tax years 1979 through 1981, Collins recovered the funds it expended to purchase video games using a three-year cost recovery period. On audit, the Internal Revenue Service ("IRS") accepted the use of a three-year recovery period.

In tax returns filed for the tax years 1982 through 1986, following the passage of ERTA, Collins continued its practice of calculating video game cost recovery based upon a recovery period of three years. The IRS disallowed portions of these deductions for the years 1982 and 1983,[1] asserting that the games should be depreciated using a 5–year cost recovery period. In 1987, Collins timely filed amended tax returns for the years 1982 and 1983 and paid the amounts claimed due by the IRS. Collins accepted the IRS's determination and treated its video games as 5–year property in amended tax returns filed for the years 1984 through 1986. Based on cost recovery conducted over a 5–year period, Collins claimed tax refunds for the years 1985 and 1986. The IRS, however, refused to pay Collins any refund for these years, disallowing the claimed deductions. Subsequently, Collins filed amended tax returns for the years 1982 to 1986, based on its original position that it could recover the costs expended in purchasing its video games over a 3–year period. When the IRS refused to refund the money Collins now claimed was due it, Collins filed suit against the Government in the United States District Court for the District of South Carolina.

At a bench trial, the Government maintained that Collins's video games were 5–year property and not 3–year property. The district court found that the Government's position was correct.[2] Collins appeals from this determination.

### II.

Under I.R.C. § 167, Congress has authorized taxpayers to take depreciation deduc-

---

1. The IRS also disallowed certain depreciation deductions Collins had taken with respect to automobiles it owned; the Government conceded these deductions to Collins at trial.

2. The court found that the IRS had erred in disallowing the deductions Collins had claimed for the years 1985 and 1986 based upon treating its games as 5–year property.

tions as a means of recovering costs used to purchase certain property used in a trade or business, or held for the production of income. Prior to the enactment of ERTA, taxpayers could elect to take depreciation deductions as determined under the Class Life Asset Depreciation Range ("CLADR") system. Under CLADR, section 167(m)(1) of the Internal Revenue Code allowed for depreciation deductions "based on the class life prescribed by the Secretary [of the Treasury] which reasonably reflects the anticipated useful life of that class of property to the industry or other group." I.R.C. § 167(m)(1) (1976). Asset guideline periods for many classes of assets had been promulgated by the IRS [3] under CLADR and were collected in IRS revenue procedures. *See, e.g.*, Rev. Proc. 77–10, 1977–1 C.B. 548.

ERTA, enacted on August 13, 1981, substantially amended the Internal Revenue Code. In particular, ERTA eliminated the CLADR system and replaced it with the Accelerated Cost Recovery System ("ACRS"), applicable to property placed in service after December 31, 1980, *see* ERTA, tit. II, § 209(a), 95 Stat. at 226. Congress's purpose in creating ACRS was twofold, as evidenced by two excerpts from a Senate Finance Committee report. First, the report states: "The changes [in the depreciation system] made by the bill will encourage investment, which will improve productivity, and will simplify the tax law and tax administration." S.Rep. No. 144, 97th Cong., 1st Sess. 6 (1981), *reprinted in* 1981 U.S.C.C.A.N. 105, 112. The report goes on to state:

> The committee believes that present rules for determining depreciation allowances ... need to be replaced because they do not provide the investment stimulus that is essential for economic expansion. The committee also believes that present rules are unnecessarily complicated.

*Id.* at 47, *reprinted in* 1981 U.S.C.C.A.N. at 152. Thus, in creating ACRS, Congress intended both to induce investment and thereby to stimulate the economy, and to facilitate IRS administration of, and taxpayer compliance with, the tax laws. *Clinger v. Commissioner,* 1990 T.C.M. (P–H) ¶ 90,459, at 2195, 1990 WL 124522 (Aug. 27, 1990).

The structure of ACRS, as originally enacted, is found in I.R.C. § 168 (Supp. V 1981). As opposed to CLADR, into which taxpayers had to elect, depreciation deductions must be calculated under ACRS, *id.* § 167(a), unless a taxpayer opts out pursuant to section 168(e)(2). Collins does not claim to have elected to take depreciation deductions other than under the ACRS system.

ACRS, as originally structured under ERTA, divided depreciable property into five groups: 3–year property, 5–year property, 10–year property, 15–year real property and 15–year public utility property. With the exception, not relevant here, of 15–year real property, section 168(b)(1) provided cost recovery schedules for the different classes of property.

I.R.C. § 168(c) (Supp. V 1981) divided property into the aforementioned classes according to the property's "present class life." "Present class life" is defined in section 168(g)(2) as "the class life (if any) which would be applicable with respect to any property as of January 1, 1981, under subsection (m) of section 167 (determined without regard to paragraph (4) thereof and as if the taxpayer had made an election under such subsection)." I.R.C. § 168(g)(2) (Supp. V 1981). Section 167(m)(1), the text of which is quoted above, remained unchanged by ERTA.

### III.

The sole issue in this case is whether Collins was justified in classifying its video games as 3–year property, as opposed to 5–year property.[4] Following ERTA's restruc-

---

**3.** Although the Code assigns authority, such as the authority to promulgate guideline periods, to the Secretary, the Secretary, in turn, assigns authority to the IRS.

**4.** It is interesting to note that, although the classification of property as 3–year or 5–year proper-

ty has substantial financial ramifications for property owners, such ramifications are not always a direct result of the respective recovery periods. Where property is retired from service because of obsolescence in accordance with criteria prescribed by regulation, the remaining unrecovered basis in such property can be imme-

turing, the Internal Revenue Code defines "[t]he term '3–year property' [as] section 1245 class property—(i) with a present class life of 4 years or less; or (ii) used in connection with research and experimentation." I.R.C. § 168(c)(2)(A) (Supp. V 1981). "The term '5–year property' means recovery property which is section 1245 class property and which is not 3–year property, 10–year property, or 15–year public utility property."[5] Id. § 168(c)(2)(B). Section 1245 class property with no assigned class life is, therefore, 5–year property.

■ It is clear that, under the plain meaning of the statute, Collins's coin-operated video games were properly characterized as five-year property. Before the district court, both sides agreed that, prior to 1981, the IRS had not assigned a class life to coin-operated video games.[6] On appeal, the Government argues that video games had an assigned class life: they fall within asset guideline class 79.0, encaptioned "Recreation", which "[i]ncludes assets used in the provision of entertainment services on payment of a fee or admission charge, as in the operation of bowling alleys, billiard and pool establishments, theaters, concert halls, and miniature golf courses." Rev.Proc. 83–35, § 3, 1983–1 C.B. 745, 762. The present class life of "Recreation" property is 10 years. Id.

If Collins's coin-operated video games properly fell within the ambit of "Recreation" properties, a contention with which we are not entirely comfortable,[7] then, under ERTA, because Collins's games' present class life exceeded four years, the games were classified as five-year property. Alternatively, if no present class life applied to Collins's games, then, under the explicit language of section 168(c)(2)(B), Collins's games again were properly classified as five-year property. Thus, Collins's video games were properly characterized as 5–year property. Accord C & M Amusements, Inc. v. Commissioner, 1993 T.C.M. (RIA) ¶ 93,527, at 2828–29, 1993 WL 471040 (Nov. 16, 1993).

## IV.

Collins concedes that, under the applicable statute and revenue rulings, its property was properly classified as 5–year property. Its only argument is that the IRS had an obligation to issue a ruling that promulgated a class life for video games that would have allowed it to classify its video games as 3–year property. In response, the Government first asserts that the IRS had no authority to take such action, and, second, that even if it did, its inaction is not subject to judicial review.

As noted above, ERTA enacted I.R.C. § 168(g)(2), which provided: "The term 'present class life' means the class life (if any) which would be applicable with respect to any property as of January 1, 1981, under subsection (m) of section 167 (determined

---

diately recovered, regardless of the recovery period assigned to the property. See Treas.Reg. § 1.167(a)–8 (1982). In such a situation, financial ramifications result from the more accelerated recovery schedules mandated for use in determining cost recovery for 3–year as opposed to 5–year property. See I.R.C. § 168(c)(2)(A) (Supp. V 1981). Of course, where the sums expended to purchase recoverable property are large, the schedule according to which cost can be recovered can, factoring in the time value of money, have a profound effect upon a taxpayer's finances.

**5.** It is undisputed and clear that Collins's video games are section 1245 class property, see I.R.C. § 1245(a)(3) (1976) (defining " 'section 1245 property' [as] any property which is or has been property of a character subject to the allowance for depreciation provided in section 167 ... and is ... personal property...."), and that they do not qualify as 10–year property, 15–year real property or 15–year public utility property, see I.R.C. § 168(c)(2)(C)–(E) (Supp. V 1981).

**6.** Collins notes that, prior to the enactment of ERTA, under the then-applicable CLADR system, it depreciated its video games assuming a class life of three years. Despite the fact that the IRS audited Collins for these tax years, it accepted Collins's use of the 3–year class life. This acquiescence, however, does not constitute a prescription of a class life by the Secretary within the meaning of section 167(m), and Collins does not argue otherwise.

**7.** Although not addressed by the parties, it is unclear how, given the uncontroverted evidence at trial that the actual useful life of Collins's games was three years, Collins's video games could properly be assigned to a class of property for which ten years "reasonably reflects the anticipated useful life of that class of property to the industry...." I.R.C. § 167(m)(1) (1976).

without regard to paragraph (4) thereof and as if the taxpayer had made an election under such subsection)." I.R.C. § 168(g)(2) (Supp. V 1981). In 1984, Congress explicitly granted the Secretary authority to promulgate new class lives, applicable to property put into service after May 23, 1983, *see* Deficit Reduction Act of 1984, Pub.L. No. 98–369, tit. I, § 31(g), 98 Stat. 494, 521, by adding the following language to the end of section 168(g)(2): "If any property (other than section 1250 class property) does not have a present class life within the meaning of the preceding sentence, the Secretary may prescribe a present class life for such property which reasonably reflects the anticipated useful life of such property to the industry or other group." I.R.C. § 168(g)(2) (Supp. II 1984) (as amended by the Deficit Reduction Act of 1984, Pub.L. No. 98–369, tit. I, § 31(d), 98 Stat. at 518). This explicit authority was subsequently moved and ultimately withdrawn, but only after the years in question here.[8] Thus, between 1984 and 1986, the IRS had the authority to promulgate new class lives applicable at least to property put into service after May 23, 1983, for which no class lives had previously been promulgated.

Between the initial implementation of ACRS and the grant of explicit authority in 1984, the IRS issued a new class life for only one class of property: telephone central office equipment. In Revenue Procedure 82–67, 1982–2 C.B. 853, the class life of telephone central office equipment was defined down from 20 years to 18 years. Subsequently, the IRS officially took the position that it would not promulgate any additional class lives or vary in any way already existing class lives.[9] *See* Rev.Proc. 83–35, § 1.01, 1983–1 C.B. 745, 745 ("The present class life is the asset guideline period (midpoint class life) established for the class as of December 31, 1980, except for asset guideline class 48.12 [telephone central office equipment]. Asset guideline class 48.12 is effective on January 1, 1981."); Prop.Treas.Reg. § 1.168–3(c)(8)(i), 49 Fed.Reg. 5940, 5958 (Feb. 16, 1984) ("[P]resent class life is the asset depreciation range (ADR) class life ('midpoint' or 'asset guideline period') (if any) applicable with respect to the property as of January 1, 1981, published in Rev.Proc. 83–35. No changes will be made to the classes or class lives which are set forth in Rev.Proc. 83–35."). *See also* IRS Memorandum dated Nov. 24, 1981 ("No other changes in depreciation guidelines are authorized by the Act or its legislative history. Nor would such changes be wise since they would establish a troublesome precedent."), J.A. 334.

Collins contends that, under section 168(g)(2) as amended in 1984, the IRS had authority to promulgate a new class life applicable to Collins's video games, and that it had this authority even before the 1984

---

**8.** Title II, section 201(a), of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085, 2133–34, moved the substance of section 168(g)(2) to section 168(i)(1) (applicable to property put into service after December 31, 1986, *see* Tax Reform Act of 1986, Pub.L. No. 99–514, tit. II, § 203(a), 100 Stat. at 2143). Subparagraph (B) thereof, which addressed the Secretary's authority to promulgate new class lives, read:

The Secretary, through an office established in the Treasury—
(i) shall monitor and analyze actual experience with respect to all depreciable assets, and
(ii) except in the case of residential rental property or nonresidential real property—
(I) may prescribe a new class life for any property,
(II) in the case of assigned property, may modify any assigned item, or
(III) may prescribe a class life for any property which does not have a class life....

I.R.C. § 168(i)(1)(B) (Supp. IV 1986). This grant was subsequently withdrawn by title VI, section 6253, of the Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100–647, 102 Stat. 3342, 3753, which deleted clause (ii) and merged the language of subparagraph (A) and the remaining language of subparagraph (B) into paragraph (1) of subsection (i) of section 168. *See* I.R.C. § 168(i)(1) (1988).

**9.** The Government explains that the IRS had special dispensation to promulgate a new class life for telephone central office equipment. In support of this proposition, the Government relies upon a statement of the Senate Finance Committee that indicates that the committee was aware that the IRS would promulgate such a class life when it approved of ACRS. *See* S.Rep. No. 144, 97th Cong., 1st Sess. 49 (1981), *reprinted in* 1981 U.S.C.C.A.N. at 154. We note, however, that the committee report in no way suggests that the committee disapproved of the IRS promulgating new class lives for other property. *See id.*

amendment of section 168(g)(2). We need not determine the merits of Collins's contentions, however, because, even assuming that the IRS had such authority, we conclude that any inaction in this regard is not subject to judicial review.

## V.

Merely because the IRS may have had authority to promulgate new class lives, which we assume for purposes of this section of our opinion, does not mean that the IRS had an obligation to promulgate a new class life for video games. Collins claims that the IRS had such an obligation and that its failure to meet that obligation is subject to judicial review. We disagree.

The propriety and extent of judicial review of the action of an agency [10] such as the IRS is determined by reference to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551–559, 701–706 (1988 & Supp. IV 1992). *See, e.g., Selman v. United States,* 941 F.2d 1060 (10th Cir.1991) (applying APA in determining propriety of review of Treasury regulation relating to abatement of interest); *Horton Homes, Inc. v. United States,* 936 F.2d 548 (11th Cir.1991) (same).

Under 5 U.S.C. § 706(a)(2)(A) (1988), where judicial review is appropriate, the reviewing court examines the agency action for abuse of discretion. Under section 701(a), judicial review of agency action is proper "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a) (1988). Because ERTA does not explicitly preclude judicial review, the first exception is inapplicable. The Govern-

ment urges the applicability of the second exception.

The Supreme Court has explained that, under the second exception provided by 5 U.S.C. § 701(a),

> even where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have committed the decision-making to the agency's judgment absolutely.... [I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion."

*Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985).

We begin our analysis by considering whether, even after the explicit grant of authority to promulgate new class lives in 1984, the IRS's failure to promulgate a new class life applicable to Collins's video games is subject to judicial review under the APA.[11] The grant of authority used precatory language: "If any property (other than section 1250 class property) does not have a present class life within the meaning of the preceding sentence, the Secretary *may* prescribe a present class life for such property which reasonably reflects the anticipated useful life of such property to the industry or other group." I.R.C. § 168(g)(2) (Supp. II 1984) (emphasis added). The use of precatory language makes it impossible to ascertain a standard against which the action or inaction of the IRS can be measured. *Selman v.*

---

**10.** Here, the agency action (perhaps better described as inaction) which Collins challenges is the issuance of Revenue Procedure 83–35, 1983–1 C.B. 745, which simply reaffirmed all preexisting class lives, with the exception of the class life for telephone central office equipment, and the issuance of Proposed Regulation 1.168–3(c)(8), 49 Fed.Reg. 5940, 5958 (Feb. 16, 1984), which stated the IRS's intent not to amend this list in any way in future.

**11.** The Government asserts, based upon its argument that Collins's video games fell within the "Recreation" property class established by the Secretary, that the 1984 grant of explicit authority in section 168(g)(2) could not have empowered

the Secretary to promulgate a new class life for Collins's games. To the extent that the Government's position is meritorious, the discussion in the text regarding the reviewability of inaction under the 1984 grant of authority is inapposite. However, in that case, the analysis of the period prior to the explicit grant of authority, *see infra,* would then apply throughout the period in question, both before and after the 1984 grant of authority. Thus, in light of our conclusion that, even prior to the 1984 grant of authority, the IRS's inaction is not reviewable, we need not address the propriety of the Government's position.

*United States*, 941 F.2d 1060 (10th Cir.1991) (finding that judicial review of IRS action was inappropriate in part because statute authorizing agency action used word "may" as opposed to "shall"); *Horton Homes, Inc. v. United States*, 936 F.2d 548 (11th Cir.1991) (same).

The inaction of an agency under such circumstances is analogous to the decision of an agency not to undertake enforcement steps, which the Supreme Court has indicated gives rise to a "presumption . . . that judicial review is not available." *Heckler v. Chaney*, 470 U.S. at 831, 105 S.Ct. at 1655. Collins raises two arguments in response: first, that the presumption does not apply in this case and, second, that the presumption is rebutted.

■ The first argument raised by Collins is that the presumption of *Chaney* does not apply where an agency's inaction affects any person's liberty or property in a manner which violates due process. *See Chaney*, 470 U.S. at 832, 105 S.Ct. at 1656; *see also id.* at 838, 105 S.Ct. at 1659 (explicitly declining to address whether judicial review is available where a "colorable claim is made . . . that [an] agency's refusal to institute proceedings violated any constitutional rights"). Collins argues that, here, the IRS's inaction had a substantial effect on Collins's property and that, in acting so as to allow a shorter recovery period for owners of telephone central office equipment, the IRS breached a due process obligation to treat similarly situated taxpayers consistently.

Collins relies heavily upon the decision of the Court of Claims in *International Business Machines Corp. v. United States*, 170 Ct.Cl. 357, 343 F.2d 914 (1965), *cert. denied*, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540

(1966). There, Remington Rand had sought and received a favorable private ruling from the IRS to the effect that its product was not subject to a particular excise tax. *Id.* at 916. International Business Machines ("IBM"), Remington Rand's sole competitor in the relevant market, subsequently sought a similar ruling with respect to its product. *Id.* After a delay of well over two years, the IRS informed both Remington Rand and IBM that both companies' products were subject to the excise tax. *Id.* at 916–17. This ruling, at least with respect to Remington Rand, had only prospective effect; as a result of Remington Rand's earlier private ruling and administrative delays, Remington Rand was effectively able to sell its product free of the excise tax for more than five years. *Id.* at 917. However, the IRS denied a claim filed by IBM for a refund of excise taxes paid over the same time period. *Id.* The Court of Claims held this to be an abuse of discretion. *Id.* at 925.

Even assuming that *International Business Machines Corp.* is good law in this circuit, the facts presented in that case clearly differ materially in many ways from those presented here. We think it sufficient to note that, in particular, while IBM claimed before the Court of Claims that the IRS had accorded different tax treatment to two virtually identical products, the taxpayer here claims only that the IRS has accorded different tax treatment to two similar but distinct classes of property. In short, even if there is some requirement that the IRS treat taxpayers in nearly identical circumstances in similar fashion,[12] the analogy asserted by Collins between owners of telephone central office equipment and owners of video games is too attenuated to warrant application of such a

12. It is well settled that Congress has much latitude in formulating prerequisites to deductions and that, frequently, only some subset of a group of substantially similarly-situated taxpayers will be entitled to a deduction because only the members of that subset fit the precise statutory requirements delineated by Congress for the deduction. *See, e.g., New Colonial Co. v. Helvering*, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934); *see also Wisely v. United States*, 893 F.2d 660, 666 (4th Cir.1990) ("Deductions are a matter of legislative grace, and the taxpayer seeking the benefit of a deduction must show that every

condition which Congress has seen fit to impose has been fully satisfied."). This suggests that, even if the holding in *International Business Machines Corp.* is correct, the outcome might not be the same were the circumstances in that case the result of congressional, rather than administrative, action. We need not examine the accuracy of this suggestion here, nor, on the facts presented, have we occasion to address the question of whether the IRS is entitled to the same latitude as is Congress when formulating prerequisites to deductions.

theory here. We conclude that the IRS's inaction in no way contravened any due process requirements that may exist.[13] Consequently, we reject Collins's contention that *Chaney*'s presumption against reviewability does not apply in this case.

■ Collins's second argument relies upon the fact that the *Chaney* presumption, that a decision of an agency not to exercise its enforcement power is not reviewable, can be overcome if the plaintiff can show that "the substantive statute has provided guidelines for the agency to follow in exercising its enforcement powers." *Chaney*, 470 U.S. at 833, 105 S.Ct. at 1656. Collins argues, unpersuasively, that the language of section 168, following ERTA, and the legislative history of ERTA provide a basis for a standard against which to measure the IRS's inaction. Collins cites pronouncements by President Ronald Reagan indicating that he wanted Congress to shorten the period over which cost recovery occurred, and reasons that the IRS's inaction is contrary to this intent in that it allowed for the cost recovery period

for certain property to be extended rather than shortened. Both ERTA's legislative history and the clear effect of the final statutory language, however, indicate that Congress rejected such a uniform approach.

ERTA's legislative history explicitly notes only that "ACRS permits recovery of capital costs for most tangible depreciable property using accelerated methods of cost recovery over predetermined recovery periods generally unrelated to, but shorter than, present law useful lives." S.Rep. No. 144, 97th Cong., 1st Sess. 48 (1981), *reprinted in* 1981 U.S.C.C.A.N. at 153. This statement indicates Congress's awareness that it was not shortening class lives for all property.[14] *See Armstrong World Indus., Inc. v. Commissioner*, 974 F.2d 422, 438 n. 24 (3d Cir.1992). This conclusion is confirmed by a statement made slightly earlier in the Senate report, acknowledging that "[m]ost eligible personal property is in the 5–year class," S.Rep. No. 144, 97th Cong., 1st Sess. 48 (1981), *reprinted in* 1981 U.S.C.C.A.N. at 153, and by the statement, also made earlier in the report, that ACRS "*generally* provides much faster

---

13. Collins cites *Contractors Transport Corp. v. United States*, 537 F.2d 1160 (4th Cir.1976), for the general proposition that Government agencies have a due process obligation to provide a rational explanation for the disparate treatment of similarly situated parties. Collins's reliance is misplaced. In *Contractors Transport Corp.*, a company challenged the Interstate Commerce Commission's denial of a certificate to transport certain goods in light of a grant to a similarly situated company. We examined the Interstate Commerce Commission's action under the APA. In accordance with 5 U.S.C. § 706, we reviewed the commission's action under an abuse of discretion standard for arbitrariness or capriciousness and found it invalid. There was no suggestion that the commission had violated any due process obligation. As we explained in *Baltimore Gas and Electric Co. v. Heintz*, 760 F.2d 1408 (4th Cir.), *cert. denied*, 474 U.S. 847, 106 S.Ct. 141, 88 L.Ed.2d 116 (1985), "That an agency is required to present a reasoned analysis when departing from established precedents is not required as a matter of constitutional due process...." *Id.* at 1418. "In order to prove a claim of selective enforcement sufficient to invalidate the actions of an administrative agency as violative of constitutional due process, [it] must [be] show[n] that the decision [of the agency] was based on some constitutionally impermissible criterion, such as race, sex, or exercise of first amendment rights." *Id.* at 1419. Here, there is no evidence that the IRS's 'selective inaction' in

any way resulted from reliance upon a "constitutionally impermissible criterion."

14. A question arises as to whether the word "generally" in this statement was intended to modify only the comparative phrase "unrelated to" or, distributively, both that phrase and the comparative phrase "shorter than." We believe the latter to be the case. In any event, the fact that the applicability of the statement is limited to "*most* tangible depreciable property" clearly supports the interpretation set forth in the text.

Moreover, even were we to read the statement as expressing the view that recovery periods for all property were to be shortened under ERTA, we would adhere to our conclusion that the IRS's inaction is not reviewable. The fact remains that, as discussed below, under the final version of ERTA, Congress lengthened the recovery periods of two categories of property. We believe the practical effect of the final version of the statute is, at all events, far more persuasive than any statement, let alone an ambiguous one, in the statute's legislative history. *Cf. United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981) (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)) ("[I]f ... statutory language is unambiguous, in the absence of a 'clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.'").

recovery of the costs of capital expenditures than occurs under existing law," *id.* at 6, *reprinted in* 1981 U.S.C.C.A.N. at 112 (emphasis added). Moreover, this view accords with Congress's other purpose in enacting ERTA, to simplify the structure of the depreciation system.

Further, Congress clearly understood that there existed property for which class lives had not been promulgated. The statute explicitly assigned such property to the class of 5–year property. Moreover, Congress, in enacting ERTA in the form it did, actually extended the depreciation period for at least one category of property: the asset guideline class captioned "Manufacture of Glass Products—Special Tools" (class 32.11) had a present class life of 2.5 years. Rev.Proc. 83–35, § 3, 1983–1 C.B. 745, 752. Because ERTA defines all property with class lives of four years or less as 3–year property, cost recovery for this category of property occurred over a 3–year period, longer than cost recovery under CLADR. Of course, the increase in cost recovery period from 3 years to 5 years under ERTA for video games (an increase of 66–⅔[15]) is larger than an increase in recovery period from 2.5 years to 3 years (an increase of 20%). Nevertheless, it is clear that if Congress itself made somewhat arbitrary decisions with respect to class lives,[16] then it could not have intended to

subject the Secretary and the IRS to judicial review for making similar decisions.[17]

Thus, the inaction of the IRS, even after the explicit grant of authority by Congress in 1984, is not subject to judicial review. The same reasoning is equally applicable to the years following enactment of ERTA but prior to the explicit grant of authority in 1984.[18] Indeed, because the IRS's action or inaction subsequent to the 1984 grant of authority is not subject to judicial review, Collins's assertion that the 1984 grant was merely a codification of authority that was possessed by the IRS even prior to its enactment confirms that the IRS's inaction prior to the 1984 grant is not subject to judicial review.

## VI.

We conclude that, even if the IRS had authority to promulgate a new class life which would have covered Collins's video games, its failure to do so is not subject to judicial review. Consequently, the judgment of the district court is

*AFFIRMED.*

---

**15.** Although it does not affect our decision, we note that, at page 2 n. 1 of its reply brief, Collins, incorrectly taking the economic life of the video games as 2 years, states that ERTA increased the cost recovery period of video games by 150%.

**16.** In *Armstrong World Industries, Inc. v. Commissioner,* 974 F.2d at 438, the Third Circuit concluded that ERTA extended the recovery period for another class property. There the court of appeals noted that, prior to ERTA, I.R.C. § 167(r) (Supp. IV 1980) permitted common rail carriers to depreciate railroad track and related items using the "retirement-replacement-betterment" ("RRB") method. *Armstrong World Indus., Inc.,* 974 F.2d at 438. Under RRB, costs expended to construct new rail lines and to improve existing lines were recovered over an extended period of years, but the cost of replacing original rail lines ("RRB replacement property") was recoverable completely in the year of expense. *Id.* ERTA repealed section 167(r), ERTA, tit. II, § 203(c)(1), 95 Stat. at 221, and required that, following a "phase-in" period, *see*

I.R.C. § 168(f)(3) (Supp. V 1981), all property that had been subject to the RRB method, including RRB replacement property, be depreciated over a 5–year period, *Armstrong World Indus., Inc.,* 974 F.2d at 438. Because "[t]he ACRS generally *shortened* the recovery period for most tangible depreciable property[,] ... [t]he new *increased* recovery period for RRB replacement property was ... an exception to the new system." *Id.* at 438 n. 24 (emphasis in original).

**17.** We note that, even were we to find the Secretary's action or inaction subject to judicial review, it would hardly make sense for us to hold the Secretary to a more stringent standard in this regard than Congress set for itself.

**18.** The reasoning underlying our conclusion that judicial review is unavailable where precatory language is employed seems to us even stronger where, as here in the years prior to 1984, there was no explicit grant of authority to the IRS to promulgate new class lives.