[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Oct. 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-12638
_____

D.C. Docket No. 07-00145-CR-3-MCR

UNITED STATES OF AMERICA

Plaintiff-Appellee,

versus

ROGELIO GALVAN CHAVEZ,
a.k.a. Julio,
a.k.a. Pelon,
ANTIOCO CABRERA ESQUIVEL,
a.k.a. Antioco Cabrera-Esquivel, etc., et al.,

Defendants-Appellants.

_____

No. 08-13382
_____

D.C. Docket No. 07-00145-CR-3-MCR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JESUS RODRIGUEZ OROSCO,
a.k.a. "Piche",
a.k.a. Jesus Reyes, etc.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(October 16, 2009)

Before EDMONSON and BIRCH, Circuit Judges, and HODGES,[*] District Judge.

HODGES, District Judge:

This case involved an unusual trial. So unusual, according to Rogelio Galvan Chavez, that the district court's refusal to grant his motion for a severance denied his right to a fair trial. He also challenges the refusal of the district court to grant a mistrial, the sufficiency of the evidence as to his guilt, and the reasonableness of his sentence. The other Appellants do not raise any issues concerning their guilt, but appeal their sentences. After careful review, we affirm the district court in all respects.[1]

_____

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

[1] Given the procedural nature of most of the issues raised on appeal, a detailed chronological recitation of the facts as disclosed by the evidence is unnecessary. References will be made to the facts germane to each claim of error in a separate discussion of each of those issues.

The indictment contained nineteen counts and joined nine defendants, only four of whom proceeded to trial and now appeal.[2]  The central offense was charged in Count One which alleged that each of the four Appellants, from January 1, 2004, through December 3, 2007, conspired to possess with intent to distribute, and to distribute, five kilos or more of cocaine and five hundred grams or more of methamphetamine in violation of 21 U.S.C. § 846.[3]

---

[2]   The remaining five Defendants entered unconditional pleas of guilty and their cases are not involved in this appeal.

[3]   Galvan Chavez was also charged in (a) Count Two - - conspiracy to use a communication device to facilitate a felony violation of 21 U.S.C. § 841(a)(1); (b) Count Three - - harboring an illegal alien for financial gain in violation of 8 U.S.C. § 1324(a)(1)(A) and (B); and (c) Count Six - - aiding and abetting the possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5)(A).

Madonado Bazquez was also charged in Count Seven - - possession of a firearm by an illegal alien in violation of 18 U.S.C. § 922(g)(5)(A).

Rodriguez Orosco was also charged in (a) Count Two - - conspiracy to use a communication device to facilitate a felony violation of 21 U.S.C. § 841(a)(1); (b) Counts Five and Six - - possession of two separate firearms on different dates by an illegal alien in violation of 18 U.S.C. § 922(g)(5)(A); and (c) Count Ten - - illegal reentry into the United States by a previously deported alien in violation of 8 U.S.C. § 1326.

Cabrera Esquivel was also charged in (a) Count Eleven - - illegal reentry into the United States by a previously deported alien in violation of 8 U.S.C. § 1326; and (b) Count Eighteen - - possession of a false social security card in violation of 18 U.S.C. § 1028(a)(6).

Galvan Chavez entered pleas of not guilty with respect to all of the counts in which he was charged. The other four Appellants announced to the district court that each of them wished to plead guilty to all of the counts in which they were named, reserving the right to have a bench trial requiring proof beyond a reasonable doubt concerning the quantities of contraband to be attributable to them, respectively, in the drug conspiracy alleged in Count One. Under Fed. Rule of Criminal Procedure 23(a), however, the proffered waivers of trial by jury required the Government's consent as well as the approval of the Court; and the Government, not wanting to try the matter twice, withheld its consent unless the entire case was heard at the same time by the jury (as to Galvan Chavez) and by the Court (as to the other three Appellants). In the interest of judicial economy, therefore, the district court, after full consultation with all counsel, resolved to proceed in that manner. A pretrial order was entered containing the following provision:

> Each of the defendants and his counsel will be present for all phases of the trial, including jury selection. The court will instruct the jury that all defendants have been charged in Count 1; however at no time prior to entry of its verdict will the jury be advised that Defendants Cesar Madonado Bazquez, Jesus Rodriguez Orosco, and Antioco Cabrera Esquivel have entered guilty pleas on Count 1. There will be only one verdict form, that for Defendant Rogelio Galvan Chavez, and the jurors will be

4

instructed that "at this time they are to consider their verdict only as to him."

Galvan Chavez then moved for a severance contending that his defense would be prejudiced by the irregularity of a proceeding in which the codefendants would make no opening statements or closing arguments, and the verdict form would relate to him alone. The district court denied that motion and proceeded to trial.[4]

## The Trial

The trial lasted four days. It was not disclosed to the jury at any time, directly or indirectly, that Madonado Bazquez, Rodriguez Orosco or Cabrera Esquivel had entered pleas of guilty to any of the charges in the indictment; and while their lawyers made no opening statements, they did cross examine Government witnesses concerning the quantity or weight of the contraband to be attributed to their respective clients. Those Defendants then rested without offering any testimony or evidence in defense, and their counsel made no closing arguments.

---

[4] The district court conducted the voir dire of the jury panel, and only Galvan Chavez participated in the selection of the jury at proceedings conducted out of the presence of the panel.

5

Galvan Chavez, on the other hand, participated fully in all aspects of the trial and testified as a witness in his own defense. After closing argument the jury was instructed that their verdict form would be restricted to the case of Galvan Chavez alone.

The Verdict and The Sentences

The jury found Galvan Chavez guilty of each of the offenses charged against him in the indictment.

The district court, as finder of the facts, later adjudged Madonado Bazquez and Rodriguez Orosco guilty as charged in Count One, and found Cabrera Esquivel guilty of the lesser included offense of conspiring to possess with intent to distribute more than 50 but less than 500 grams of methamphetamine.

Subsequently, at sentencing, the court imposed a term of life imprisonment upon Galvan Chavez under Count One with lesser concurrent sentences for the other counts of conviction. Madonado Bazquez received a sentence of 136 months; Rodriguez Orosco received a sentence of 200 months; and Cabrera Esquivel received a sentence of 96 months, all imposed under count One with lesser concurrent sentences for their other offenses.

Galvan Chavez' Motion for Severance

Fed. Rule of Crim. P. 8(b) permits the joinder of Defendants in the same indictment "if they are alleged to have participated in the same act or transaction," and the general rule is that Defendants indicted together should be tried together, especially in conspiracy cases. E.g., United States v. Cassano, 132 F.3d 646 (11th Cir. 1998); United States v. Jacoby, 955 F.2d 1527 (11th Cir. 1992); United States v. Alvarez, 755 F.2d 830 (11th Cir. 1985). And while Fed. Rule of Crim. P. 14(a) permits a severance of the Defendants for trial if their joinder "appears to prejudice a defendant," the law is well developed that we will not reverse the denial of a motion for severance in the absence of a clear abuse of discretion. To succeed on appeal the Defendant must carry the heavy burden of demonstrating the lack of a fair trial due to actual, compelling prejudice. E.g., United States v. Gari, 572 F.3d 1352 (11th Cir. 2009); United States v. Novaton, 271 F.3d 968 (11th Cir. 2001); United States v. Cobb, 185 F.3d 1193 (11th Cir. 1999).

While a severance on any of the following grounds is rarely granted,[5] the cases discuss four types of prejudicial joinder that can require a severance under Rule 14:

(1)  Where the Defendants rely upon mutually antagonistic defenses.  United States v. Gonzalez, 804 F.2d 691 (11th Cir. 1986); United States v. Crawford, 581 F.2d 489 (5th Cir. 1978);[6] United States v. Johnson, 478 F.2d 1129 (5th Cir. 1973).  But see, Zafiro v. United States, supra, n. 5.

(2)  Where one Defendant would exculpate the moving Defendant in a separate trial, but will not testify in a joint setting.  United States v. Cobb, supra; United States v. Dennis, 645 F.2d 517 (11th Cir. 1981), abrogated in part by United

---

[5]  Due to former jeopardy constraints on the Government's right of appeal, all of the decisions in the courts of appeals involve cases in which the district court has denied a severance.  It is impossible to gauge the frequency with which severances are granted in the district courts, and while the number may be small, it bears remembering that the rarity of an appellate reversal where a severance has been denied does not necessarily mean that Rule 14 is a hollow shell.  That said, the heavy weight of a Defendant's burden in seeking reversal of a denial of a severance is manifested by the paucity of decisions reaching that result.  Since the 1993 decision of the Supreme Court in Zafiro v. United States, 506 U.S. 534, 113 S. Ct. 933, 122 L. Ed. 2d 317 (1993), rejecting the concept that mutually antagonistic defenses are prejudicial per se, thereby casting doubt on the continuing vitality of several earlier decisions of this circuit (see United States v. Blankenship, 382 F.3d 1110 (11th Cir. 2004), and United States v. Talley, 108 F.3d 277 (11th Cir. 1997)), there has been only one decision of this court finding error in a district court's denial of a motion for severance.  See United States v. Cobb, 185 F.3d 1193 (11th Cir. 1999) (holding that a joint trial effectively denied one of the Defendant's right of access to exculpatory testimony by the codefendant who would have been available as a witness at a separate trial).

[6]  Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) adopted Fifth Circuit precedents rendered prior to October 1, 1981.

States v. Lane, 474 U. S. 438, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986); United

States v. Martinez, 486 F.2d 15 (5th Cir. 1973).

(3)  Where inculpatory evidence will be admitted against one Defendant that

is not admissible against the other.  United States v. Lane, 584 F.2d 60 (5th Cir.

1978); United States v. Bova, 493 F.2d 33 (5th Cir. 1974), abrogated in part by

United States v. Lane, 474 U. S. 438, 106 S. Ct. 725, 88 L. Ed. 2d 814 (1986);

Barton v. United States, 263 F.2d 894 (5th Cir. 1959).

(4)  Where a cumulative and prejudicial "spill over" effect may prevent the

jury from sifting through the evidence to make an individualized determination as

to each Defendant.  United States v. Schlei, 122 F.3d 944 (11th Cir. 1997); United

States v. Wilson, 894 F.2d 1245 (11th Cir. 1990); United States v. Broadwell, 870

F.2d 594 (11th Cir. 1989).

Galvan Chavez's motion for a severance was not supported by any of these

theories of relief.  Distilled to its essence, his contention was that he might have

had a better chance of acquittal if he could have gone it alone without the baggage

of codefendants who were, essentially, in the eyes of the jury, offering no defense

at all.  That claim is simply insufficient to demonstrate prejudice.  Zafiro, supra,

506 U.S. at 540, 113 S.C. at 938 ("It is well settled that defendants are not entitled

to severance merely because they may have a better chance of acquittal in separate

9

trials.")  See also, United States v. Cassano, 132 F.3d 646, 651 (11th Cir. 1998), and

United States v. Talley, 108 F.3d 277, 280 (11th Cir. 1997).

Despite his inability to demonstrate specific and compelling prejudice to his

defense, Galvan Chavez also argues on appeal that the lack of a severance should

be treated as reversible error because it resulted in a "deception" of the jury by the

district court, and that this court should exercise its supervisory authority to prevent

any future repetition of such an unseemly ruse.  Specifically, Galvan Chavez

complains that the jury was misled to believe that it was trying four Defendants

when, in fact, his was the only case proceeding to verdict.

We begin our analysis of this claim with two observations.  One is that the

circumstances of this case appear to be unique.  Galvan Chavez cites no authority -

- and we have found none - - that would condemn the technique employed here by

the district judge in an obvious good faith effort to resolve the trial enigma which

confronted her.  Second, it is a bit too much to say that the jury was deceived in the

sense that the court overtly misdescribed or falsely characterized the posture of the

other Defendants.  On the contrary, the jury was told that the other Defendants

were contesting Count One, which was true.[7]  They were simply uninformed at the

_____

[7]    Galvan Chavez argues that his codefendants had pled guilty to Count One and, to
be sure, the record reflects that the district court and the parties did refer to the pretrial
proceedings relating to those Defendants as resulting in a plea of guilty.  In its legal effect,

10

outset that the trial as to those Defendants was being conducted to the court, not the jury. Rulings on motions in limine frequently result in pertinent information being withheld from the jury, and that is nothing more or less than occurred here.

While we are not prepared to endorse as an accepted technique the device of conducting simultaneous jury and bench trials in multiple Defendant criminal cases generally, neither are we prepared to find reversible error in the unique circumstances of this case especially in the absence of any demonstrated prejudice to the complaining Defendant.

Galvan Chavez's Motions for a Mistrial

Galvan Chavez's motions for a mistrial related to a series of separate events at trial, all of which were appropriately corrected by the district court with curative instructions, where necessary, and no discussion is required except for one incident. That episode involved cross examination of a Government agent concerning two checks found during a search of Galvan Chavez's home. Both were in large amounts made payable by Galvan Chavez to others. Counsel for the

---

however, it seems more accurate to describe those proceedings as a waiver of jury trial coupled with a stipulation or admission concerning the elements of the offense except for the quantity of the contraband alleged in the indictment - - something less than a consummated plea of guilty as charged. This construction of the events is corroborated by the stipulation that the issue would be resolved by the court on the basis of proof beyond a reasonable doubt (rather than resolution of a sentencing factor by a preponderance of the evidence), and by the court's post trial finding that Cabrera Esquivel was guilty of a lesser included offense, not the offense as charged in the indictment.

Defendant asked if the agent had determined the purpose of the checks, to which the agent responded that she had not. The examination then continued:

> Q: Wouldn't you like to know if the checks were being used for a legal purpose such as buying a restaurant or an illegal purchase such as doing something such as buying drugs or paying off someone for a drug shipment? Wouldn't that be important to you?
>
> A: Sure.
>
> Q: You didn't bother checking on that?
>
> A: The only way to know it is through the Defendant Galvan Chavez.

At that point counsel for Galvan Chavez approached the bench and moved for a mistrial on the ground that the Agent's response constituted an impermissible comment on his right to remain silent. After extended discussion in the absence of the jury, the Government offered a stipulation that the checks were for a legitimate business purpose, not for an illegal one, and the district court then specifically instructed the jury to that effect. The court also carefully reminded the jury of the Government's burden of proof and the Defendant's right of silence including the lack of a duty to prove anything.

We review the denial of a mistrial for abuse of discretion, and will reverse the district court only when we conclude that a defendant's substantial rights have

12

been prejudicially affected to the point that, absent such prejudice, the outcome of the trial would have been different. United States v. Newsome, 475 F.3d 1221, cert. denied 128 S. Ct. 218 (2007); United States v. Delgado, 321 F.3d 1338 (11th Cir. 2003); United States v. Wilson, 149 F.3d 1298 (11th Cir. 1998).

Here, the inappropriate reference to the Defendant was all but invited by the cross examination, not instigated by the prosecution, and was promptly defused by an instruction from the court that was not only curative but entirely favorable to the accused - - namely, that the checks were for a legitimate business purpose. Moreover, the Defendant subsequently elected to testify, foregoing his right to remain silent, adding an element of harmlessness to the incident as a whole. See United States v. Guerra, 293 F.3d 1279, 1288-1289 (11th Cir. 2002) (finding harmless error in the denial of a mistrial under remarkably similar circumstances). We follow Guerra and find no error here. The episode in question had no effect upon the outcome of the trial.[8]

---

[8] Galvan Chavez also raises, for the first time on appeal, a claim that he was prejudiced by the fact that one or more of his codefendants chose to attend the trial wearing obvious prison garb. We review this claim for plain error and, applying that rigorous standard, find no basis for concluding that the error - - if there was one - - not only affected Galvan Chavez's substantial rights, but also "seriously affected the fairness, integrity, or public reputation of the judicial proceedings" so that it should be noted and corrected by this Court regardless of the lack of timely objection in the district court. United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003) (citing United States v. Lejarde-Rada, 319 F.3d 1288, 1290 (11th Cir. 2003)). Even if the Defendant himself had been tried in prison clothes, the lack of objection "is sufficient to negate the presence of compulsion necessary to establish a constitutional violation"

Galvan Chavez made timely motions at trial for a judgment of acquittal, and now asserts on appeal that the evidence was insufficient to support his convictions under Counts One and Six of the indictment. We review this issue de novo, United States v. Merrill, 513 F.3d 1293, 1299 (11th Cir. 2008), but in doing so we weigh "the evidence in the light most favorable to the Government, drawing all reasonable inferences and credibility choices in the Government's favor." Id.

The evidence revealed that Galvan Chavez owned and operated three separate restaurants at different locations in the Pensacola area under the name Cancun's Mexican Grill. On June 13, 2007, a confidential source acting under Government supervision and wearing a recording device, met with the Defendant Rodriguez Orosco and a coconspirator, Alejandro Hatem Hernandez.[9] During the meeting, Rodriguez Orosco and Hatem Hernandez conversed in Spanish, and Hatem Hernandez translated the substance of the conversation for the confidential source in English. The essence of the discussion was that Rodriguez Orosco had kilo quantities of cocaine available for purchase, and that the price per kilo would

---

worthy of noting as plain error. Estelle v. Williams, 425 U.S. 501, 513, 96 S. Ct. 1691, 1697, 48 L. Ed. 2d 126 (1976).

[9] Hatem Hernandez was a Defendant charged in Count One of the indictment who pled guilty and has not appealed.

14

be discounted if the transaction involved as many as five kilos. Hatem Hernandez also told the confidential source that Rodriguez Orosco had methamphetamine available as well.

Two days later, on June 15, at a location near one of the Cancun restaurants, the confidential source bought 27.8 grams of cocaine from Rodriguez Orosco. Three days after that, on June 18, the confidential source, again wearing a recording device, met with Galvan Chavez and Hatem Hernandez inside the Cancun Grill. Before Galvan Chavez arrived, Hatem Hernandez told the confidential source that "my boss doesn't talk openly about it." When Galvan Chavez appeared, he conversed with Hatem Hernandez in Spanish.

> Galvan-Chavez: I would need [pause] instead of talking with him you can deal with me and then you can deal with him from there. [Pause] Because I don't want to get involved in anything. If I get involved with someone it has to be with someone I know.
>
> Hatem-Hernandez: I know.
>
> Galvan-Chavez: I don't know him. [Pause] But I could get what you want [inaudible].

Subsequently, Hatem-Hernandez spoke to the confidential source in English.

> Hatem-Hernandez: He can get anything we want. But he said that he would not like deal with anyone but me. I mean like if you want something talk to me [inaudible].

He said that he doesn't want to deal with someone,
anyone that he doesn't know.

Apart from this telling exchange, there were two other recorded telephone conversations in which Galvan Chavez discusses "cars," a euphemism for kilos of cocaine, and abundant circumstantial evidence of the ongoing conspiracy as well as Galvan Chavez's participation in it.[10]  In addition, the Government produced as witnesses two of Galvan Chavez's fellow inmates after his arrest.  Both testified that Galvan Chavez told them he was involved in dealing both cocaine and methamphetamine that came from Atlanta; that he had a front man by the name of Orosco who handled the drugs; that he did not deal with persons from the United States, preferring to interact with those from Mexico because "he could have their families threatened and stuff like that;"[11] and one of the two testified that Galvan Chavez said he had brought into Pensacola 52 kilos of cocaine during the fall of 2007.

---

[10]  In 2006 and 2007, for example, Galvan Chavez had four different cell phones in his name, used three other cell phones not in his name, and possessed numerous other prepaid or disposable cell phones.  From 2003 through 2007, Galvan Chavez purchased thirteen cars and trucks, many of which were frequently used by the codefendants, and he had sixteen driver's licenses issued to himself.

[11]  There was also testimony in a similar vein that Galvan Chavez had let it be known that if any of his codefendants testified against him, their families in Mexico would suffer; and, although all pled guilty, none testified at the trial.

16

We have no difficulty concluding that there was ample evidence which, if credited by the jury beyond a reasonable doubt, as it obviously was, fully supports the verdict finding Galvan Chavez guilty as charged in Count One.[12]

### The Sentences

After the decision of the Supreme Court in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L.Ed.2d 621 (2005), holding that mandatory application of the United States Sentencing Guidelines is unconstitutional, the imposition of a sentence by the district court in a criminal case now involves a two step process. First, the district court must still determine the appropriate sentencing range under the Guidelines. Gall v. United States, 552 U.S. 38, 128 S. Ct. 586, 169 L. Ed. 2d 445 (2007); United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). Second, the district court must then consider the various factors enumerated in 18 U.S.C. § 3553(a) in ultimately arriving at a reasonable sentence. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).

In reviewing the reasonableness of a sentence on appeal, this court also follows a two step process. We must first determine whether the sentence is

---

[12] We reach the same conclusion with respect to Count Six - - aiding and abetting the possession of a firearm by an illegal alien - - and see no need for extended discussion. There was evidence that Galvan Chavez gave the subject firearm to Hatem Hernandez (who later sold it to the confidential source), and ample evidence from which the jury could infer knowledge on the part of Galvan Chavez that Hatem Hernandez was an illegal alien.

17

procedurally reasonable,[13] and then determine whether it is substantively appropriate. United States v. Sarras, 575 F.3d 1191, 1219 (11th Cir. 2009); United States v. Pugh, 515 F.3d 1179, 1189-90 (11th Cir. 2008).

The Supreme Court has held that the courts of appeals may, but are not required, to apply a presumption of substantive reasonableness to a sentence that is procedurally sound and lies within the applicable Sentencing Guidelines range. Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 168 L.Ed.2d 203 (2007). This court has not elected to apply such a presumption. See United States v. Campbell, 491 F.3d 1306, 1313-14 (11th Cir. 2007). Still, we have said that "ordinarily we would expect a sentence within the Guidelines range to be reasonable," Talley, 431 F.3d at 788, and we recently recognized that there appears to be "no post-Booker case in our circuit where a sentence within the advisory guidelines range was held unreasonable." Sarras, 575 F.3d at 1219.

Thus, if a sentence is procedurally reasonable and is within the applicable Guidelines sentencing range, we review substantive reasonableness of the sentence by applying a deferential abuse of discretion standard of review, Gall, 128 S.Ct. at

---

[13] A sentence may be procedurally unreasonable if the district court improperly calculates the Sentencing Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors under 18 U.S.C. § 3553(a), bases a sentence on clearly erroneous facts, or fails to adequately explain the chosen sentence. Gall, 552 U.S. at _____, 128 S. Ct. at 597.

18

594, <u>United States v. Williams</u>, 526 F.3d 1312, 1321(11th Cir. 2008), and by looking at the totality of the circumstances,  <u>Pugh</u>, 515 F.3d at 1191, <u>Sarras</u>, 575 F.3d at 1219, recognizing that there will usually be a "range of reasonable sentences from which the district court may choose."  <u>Talley</u>, 431 F.3d at 788, <u>Williams</u>, 526 F.3d at 1322.

(a)     <u>The sentence of Galvan Chavez</u>.  With regard to Count One of the indictment, the district court found Galvan Chavez responsible for at least 52 kilos of cocaine, relying upon his admissions to the cell mate as well as the other corroborating evidence in the case.  This resulted in a base offense level, under U.S.S.G. § 201.1(c), of 36.  The district court then applied a four level enhancement under U.S.S.G. § 3B1.1(a) for the Defendant's aggravating role as an organizer or leader of the conspiracy involving five or more participants; an additional two level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice based upon the threats against the families of his codefendants and his perjury at trial; and an additional two level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with the offense.[14]  This process resulted in a total offense level of 44 which was then reduced to 43 under U.S.S.G. § 5A,  App.

---

[14]     Galvan Chavez objected to each of the enhancements, but the objections were properly overruled based upon the evidence in the record supporting all of them.

n.2.[15]  The prescribed advisory sentence at offense level 43, regardless of an offender's criminal history category, is not a range of months as in all lower levels, but a stated term of life imprisonment.

After determining the applicable sentence under the Guidelines, the district court turned attention to the requirements of 18 U.S.C. § 3553(a) and made extensive findings including a statement that the judge had considered all of the statutory sentencing factors.  The court concluded by finding that a term of life imprisonment was a reasonable sentence, and that was the sentence the Court imposed.[16]

We first conclude that Galvan Chavez's sentence of life imprisonment was procedurally reasonable.  The district court appropriately considered each step of the Guidelines' sentencing process and arrived at the applicable Guidelines sentence.  The court recognized that the Guidelines are advisory, not mandatory, and correctly considered the factors listed in 18 U.S.C. § 3553(a).  There is no clear error in the district court's findings of fact, and the judge adequately explained the chosen sentence, discussing in particular the seriousness of the offense behavior,

---

[15]  The highest offense level reflected on the Guidelines' Sentencing Table is level 43.  The application note provides that an offense level of more than 43 is to be treated as an offense level of 43.

[16]  Lesser concurrent sentences were imposed with respect to the other counts of conviction, and they are not challenged on appeal.

sentences imposed in other similar cases, and the lack of any apparent reason to deviate from the advisory Guidelines sentence.

We also conclude that the sentence of Galvan Chavez is substantively reasonable. His entire argument to the contrary is that he is only thirty six, the father of three small children, has no significant criminal record, and he supports his elderly parents. That is not enough to disturb the sentencing discretion of the district court where a life sentence was within the statutory maximum, was advised by the Guidelines,[17] was supported in the reasonable view of the district court by the § 3553(a) sentencing factors, and thereby came within a range of reasonable sentences from which the district court was free to choose. Talley and Williams, supra.

There was no error in the district court's sentencing of Galvan Chavez.

(b)    The sentence of Madonado Bazquez. As a result of a search of Madonado Bazquez's house, investigating officers found $17,500.00 in cash or currency, and a receipt which led to the discovery that a woman who lived with the Defendant had paid $15,179.00 in cash for a Chevrolet Tahoe being driven by the Defendant. The district court found that there was no plausible source of income

---

[17]    In fact, the Sentencing Guidelines calculations resulted in a Total Offense Level above the maximum level of the Sentencing Table. See n. 15, supra.

21

available to the Defendant apart from his admitted participation in the drug conspiracy, and that he was the source of the methamphetamine (27.7 grams) involved in a controlled purchase by the confidential source from Hatem Hernandez that occurred on August 30, 2007.[18] The district court therefore inferred that the cash constituted proceeds from trafficking in methamphetamine; and, using a conversion value of $14,000 per pound for methamphetamine, as disclosed by the evidence, the court concluded that the cash proceeds represented the sale of over 1,000 grams of methamphetamine.[19] The court then applied the Drug Quantity Table following U.S.S.G. § 2D1.1 and determined that the Base Offense Level applicable to the Defendant's conviction under Count One was Level 32, which also became the applicable Total Offense Level.[20] The Defendant had no criminal history points, and the Guidelines sentencing range under Offense Level 32, Criminal History Category I, was determined to be from 121 to 151 months. The District Court then imposed, as to Count One, a midrange sentence of 136 months.

---

[18] There was also evidence in the intercepted conspiratorial conversations that Madonado Bazquez was the source, or contemplated source, of methamphetamine to be sold in other transactions.

[19] We have expressly approved the device of converting cash into the equivalent amount of drugs for purposes of determining drug quantity. United States v. Tokars, 95 F.3d 1520, 1542 (11th Cir. 1996).

[20] The Defendant was subject to a two level firearm enhancement which was then offset by a two level reduction for acceptance of responsibility (based upon the guilty pleas), thereby producing the Total Offense Level of 32.

The Defendant's sole contention on appeal is that the sentence was procedurally unreasonable because the district court merely speculated that the Defendant's wherewithal in cash was derived from dealing in methamphetamine. We disagree. Here, the Defendant had admitted his involvement in the charged conspiracy, and the only remaining issue was the level or degree of his participation. He was found to have possessed large sums of currency with no apparent explanation of its origin, and there was evidence that he was one of the sources of the methamphetamine involved in the conspiracy including transactions (or intended transactions) other than the seized 27.7 grams. We are unable to say that the district court's inference that the cash came from trafficking in methamphetamine was speculative to the point of being clearly erroneous. It was, instead, a reasonable inference that the court was free to make.

There was no error in the district court's sentencing of Madonado Bazquez. The sentence was both procedurally and substantively reasonable.

(c) <u>The sentence of Rodriguez Orosco</u>. The Probation Officer's presentence report determined that Rodriguez Orosco was directly responsible for approximately 805 grams of methamphetamine, 1,052 grams of cocaine and 200 pounds of marijuana placing him in Base Offense Level 32 under the Sentencing guidelines. He received a two level enhancement for possessing a firearm, and a

23

two level reduction for acceptance of responsibility. His Total Offense Level thus remained at 32. His Criminal History Category was I, and at Total Offense Level 32, Criminal History Category I, his advisory Guidelines sentence was a term of commitment of 121 to 151 months. The Defendant did not object to those Guidelines calculations, but the Government did. The Government argued that the presentence report did not take into account the broader scope of the conspiracy that was reasonably foreseeable to Rodriguez Orosco in his capacity as the front man for Galvan Chavez, and that Rodriguez Orosco should be held accountable on that basis, like Galvan Chavez, for 52 kilos of cocaine.

The district court sustained the Government's objection to the presentence report and found that Rodriguez Orosco should be treated under the Guidelines as a conspirator responsible for 52 kilos of cocaine. That placed him in Total Offense Level 36, rather than Level 32, and his Guidelines sentencing range became a term of 188 to 235 months. After consideration of the statutory sentencing factors, the district court then imposed a low midrange sentence of 200 months.

The district court's determination of the drug quantity attributable to a defendant is reviewed for clear error. United States v. Rodriguez, 398 F.3d 1291, 1296 (11th Cir. 2005). Proper calculation of the Guidelines sentencing range requires consideration of all relevant conduct. United States v. Hamaker, 455 F.3d

24

1316, 1336 (11th Cir. 2006).  Relevant conduct should include all acts committed, aided, abetted, procured, or willfully caused by a defendant, and all reasonably foreseeable acts of others in furtherance of a jointly undertaken criminal activity that occurred during the commission of the offense.  U.S.S.G. § 1B1.3(a)(1).  The commentary clarifies that, in the case of contraband, a conspirator's relevant conduct includes amounts directly attributable to the conspirator and "all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that [the conspirator] jointly undertook."  Id. comment (n.2). Here, there was evidence that Rodriguez Orosco and Galvan Chavez were both involved in a drug conspiracy involving a substantial number of other coconspirators; that Galvan Chavez was the leader or "boss;" that Rodriguez Orosco was one of Galvan Chavez's chief lieutenants or a "front man;" and, based upon a totality of the evidence, that it was reasonably foreseeable to Rodriguez Orosco that the conspiracy would involve the 52 kilos of cocaine attributed to Galvan Chavez.

There was no error in the district court's sentencing of Rodriguez Orosco. The sentence was both procedurally and substantively reasonable.

(d)  The sentence of Cabrera Esquivel.  Requiring proof beyond a reasonable doubt on the issue of guilt, the district court concluded as the fact finder that

25

Cabrera Esquivel should be convicted of a lesser included offense under Count One, namely, the offense of conspiring to distribute more than 50 but less than 500 grams of methamphetamine. This finding was based upon undisputed evidence that he supplied 56.8 grams of methamphetamine that was sold by Hatem Hernandez to the confidential source on November 27, 2007. In reaching that conclusion the district court did not take into account the fact that a search of the Defendant's house resulted in the seizure of $14,400 in currency. At sentencing, however, based upon a preponderance of the evidence and finding no explanation for the presence of the cash except for Cabrera Esquivel's dealing in methamphetamine, the district court converted the cash to contraband using the same methodology employed with respect to Madonado Bazquez. There was no clear error in so doing. This resulted in the conclusion that, for sentencing purposes, Cabrera Esquivel should be held accountable for 467 grams of methamphetamine which entailed a Guidelines sentencing range of 78 to 97 months. The district court then imposed a commitment sentence of 96 months.[21]

---

[21] If only 56.8 grams of methamphetamine were attributed to the Defendant for sentencing, his Base Offense Level under the Guidelines would be Level 26. With a two level reduction for acceptance of responsibility, his Total Offense Level would be 24, and with a Criminal History Category of I, his sentencing range would be 51 to 63 months (with a statutory mandatory minimum of 60 months). Using 467 grams for purposes of sentencing placed the Defendant in Base Offense Level 30. After receiving the two level reduction for acceptance of responsibility, his Total Offense Level was 28, Criminal History Category I, with a sentencing range of 78 to 97 months.

There was no error in the district court's findings or in the ultimate sentence of Cabrera Esquivel. The sentence was both procedurally and substantively reasonable.

## Conclusion

The judgments and sentences imposed by the district court are AFFIRMED in all respects.