[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11121
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cr-00116-ODE-GGB-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ELTON LEE FLENAUGH,
a.k.a. Ali Emir Waheed,
a.k.a. Joshua Ford,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(July 27, 2015)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Elton Lee Flenaugh appeals his sentence of 111 months of imprisonment

following his pleas of guilty to possessing 15 or more counterfeit or unauthorized access devices, 18 U.S.C. § 1029(a)(3), and aggravated identity theft, *id.* § 1028A. Flenaugh challenges the four-level enhancement of his offense level for using the means of identification of 50 or more victims to manufacture fraudulent credit cards. United States Sentencing Guidelines Manual § 2B1.1(b)(2)(B) (Nov. 2013). We affirm.

Flenaugh argues, for the first time, that the "district court should have required proof of the number of victims by clear and convincing evidence rather than by a preponderance of the evidence" because the enhancement significantly increases his advisory guideline range, but we rejected a similar argument to apply a more stringent burden of proof in *United States v. Florence*, 333 F.3d 1290, 1294 (11th Cir. 2003). In *Florence*, we reiterated that "our precedent states that 'the government's burden of proof in establishing the applicability of a sentencing enhancement is the preponderance of the evidence standard.'" *Id.* (quoting *United States v. Gonzalez*, 71 F.3d 819, 836 (11th Cir. 1996) (brackets omitted)). Like the defendant in *Florence*, Flenaugh "is unable to establish any error, let alone plain error, by the district court in regard to the burden of proof required to establish the facts supporting the application" of his sentence enhancement. *Id.*

Flenaugh contends that he was not subject to section 2B1.1(b)(2)(B) because he did not use the means of identification of other persons unlawfully or without

2

authority, but the district court did not clearly err by making a contrary finding. Numerous fraudulent credit cards and driver's licenses discovered in Flenaugh's belongings, and photographs and emails collected from personal electronic devices and email accounts controlled by Flenaugh and his girlfriend, Deje Silas, established that Flenaugh used stolen personal identity information to manufacture fraudulent credit cards. When Flenaugh and Silas were arrested at the Atlanta airport, they had in their baggage 94 fraudulent credit cards, a majority of which had been encoded with real account information, and some of those cards had been embossed with the names of Robert Lloyd, Burton Andrews, and Daniel Roberts, which matched the names on three counterfeit driver's licenses containing Flenaugh's photograph. Earlier, officers in California and Miami had discovered fraudulent credit cards in Flenaugh's control that had been embossed with Lloyd's name and the name of Matthew Carnegie, an identity that Flenaugh used to travel to Portland, Oregon, where he made unauthorized purchases using a real credit account number identical to one encoded on a fraudulent card that he possessed at the Atlanta airport. The officers in California and at the Atlanta airport also seized Flenaugh's iPad, the couple's iPad Mini, and Silas's cellular telephones, and the searches of those devices and the couples' email accounts revealed that the couple transacted with persons in Russia and Costa Rica; accessed information about software used to create credit card templates; received software used to encode the

3

magnetic strips of credit cards with account information; bought and sold blank credit cards and retail gift cards; had an embossing machine; and had multiple images and lists of detailed personal identification information for hundreds of persons, some of which had been encoded on the fraudulent credit cards seized at the Atlanta airport. At sentencing, a district court is free to make reasonable inferences from the evidence. *See United States v. Chavez*, 584 F.3d 1354, 1367 (11th Cir. 2009). In the light of the uncontested facts in Flenaugh's presentence investigation report and the evidence introduced during his sentencing hearing, the district court could reasonably infer that Flenaugh made the fraudulent credit cards found in his possession when he had resources available to create the cards and they were encoded with real account information and embossed with Silas's name and names matching those on Flenaugh's counterfeit driver's licenses.

Flenaugh argues, for the first time, that he did not manufacture every fraudulent credit card found in his possession, but even accepting that as true, the district court nonetheless could hold him responsible for all the fraudulent cards that he possessed. His sentence enhancement is based on "the offense . . . involved," U.S.S.G. § 2B1.1(b)(2), and encompasses "the offense of conviction and all relevant conduct under § 1B1.3," U.S.S.G. § 1B1.1cmt. n.1(H), which includes "acts . . . committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and the reasonably foreseeable acts

4

of his coconspirators, *id.* § 1B1.3(a)(1). Based on the evidence that Flenaugh possessed functionable fraudulent credit cards, identification information for hundreds of people, and access to equipment and associates involved in producing fraudulent cards, the district court reasonably found that Flenaugh manufactured the fraudulent cards or directed others to make the cards for him. Although many of the fraudulent cards in Flenaugh's possession were not encoded with personal identification information discovered on his devices or in his email accounts, the district court could reasonably infer that Flenaugh used, directed an associate to use, or reasonably could have foreseen that an accomplice would use identification information they had available to them to produce the fraudulent credit cards.

The district court did not clearly err in finding that Flenaugh had more than 50 victims. At sentencing, Flenaugh conceded that two victims had suffered actual financial losses from unauthorized charges made on credit card accounts that were fraudulently created in their names. And Flenaugh, by failing to object to the statement in his presentence investigation report, admitted that the fraudulent credit cards in his possession contained the personal identification information of at least 116 persons. *See United States v. Bennett*, 472 F.3d 825, 833–34 (11th Cir. 2006). Flenaugh's offense involved more than 50 victims.

We **AFFIRM** Flenaugh's sentence.

5