[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11442
Non-Argument Calendar
_____

D.C. Docket No. 7:18-cr-00024-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HENRY AUSTIN, II,
a.k.a. POOCHIE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 12, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Henry Austin, II, appeals his jury conviction and 125-month sentence for conspiracy to distribute cocaine and cocaine base, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and 851(a).  Austin argues that the district court: (1) abused its discretion by admitting evidence of his prior conviction for sale of cocaine in 1992, and (2) erred in calculating his guideline range by attributing to him over five kilograms of cocaine and without making an explicit factual finding to support this allegation.  We affirm.

## I.   Background

In 2018, a grand jury charged Austin, along with 18 co-conspirators, with conspiracy to distribute more than five kilograms of cocaine and cocaine base between January 1, 2013, and October 28, 2014.  Most of Austin's named co-conspirators, including Andrew Carter, Willis Young, Eddie Smith, and Kenyatta Mitchell pleaded guilty.

At Austin's trial, Carter testified that, during the relevant time period, he received 15-kilogram shipments of cocaine every four to five days and would distribute it to various individuals throughout Georgia.  Carter distributed cocaine to Austin, whom he knew through Young and Smith.  Carter sold approximately half a kilogram, or 18 ounces, of cocaine to Austin using Smith or Young as an intermediary about once or twice a week from around March or April of 2013 until Carter's arrest in September 2014.

2

Similarly, Young testified that he introduced Austin to Kenyatta Mitchell so that Austin could buy cocaine from Mitchell. In 2011 and 2012, Young brought Austin to buy drugs from Mitchell three times—on two of those occasions Austin purchased 9 ounce of cocaine and on one occasion 18 ounces. Young also helped Austin buy cocaine from Carter.

Smith testified that he knew Austin for about 20 years and Smith sold crack cocaine for him in the 2000s. Austin taught Smith how to cook crack cocaine. In the 2000s, Smith brokered five or six drug transactions between Austin and Mitchell in amounts varying between 9 and 18 ounces. And between 2013 and 2014, Smith brokered five or six drug transactions between Austin and Carter for 18 ounces of cocaine each time.

The government also introduced at trial audio recordings obtained through authorized wiretaps in which Austin was recorded speaking with various co-conspirators discussing the poor quality of the cocaine he purchased from Carter in September 2014, stating he was having difficulty cooking it, and arranging to exchange it for another 18 ounces. Additionally, the government introduced video surveillance and photographs taken of Carter, Young, and Austin together during at least two different drug transactions. Finally, the government introduced, over Austin's objection, evidence of Austin's 1992 Georgia conviction

3

for two counts of sale of cocaine, pursuant to Federal Rule of Evidence 404(b).[1]

However, the district court agreed to give the defense's requested limiting

instruction with regard to the prior conviction, admonishing the jury that it "must

not consider any of this evidence to decide whether the Defendant committed the

acts charged now."  But the court also explained that the jury could "consider

evidence of similar acts done on other occasions to decide whether the Defendant

had the state of mind or intent necessary for the crime charged, or whether the

Defendant acted according to a plan or to prepare to commit a crime, or whether

the Defendant committed the charged acts by accident or mistake."  Following

deliberations, the jury convicted Austin as charged, and determined that he

conspired to possess with intent to distribute less than 500 grams of cocaine.

Prior to sentencing, the probation office prepared a presentence investigation

report ("PSI").  The PSI noted that, according to trial testimony, from 2013 to

2014, Austin purchased from Carter approximately 1.53 kilograms of cocaine

through brokered transactions with Young, and approximately 2.55 to 3.06

---

[1] Rule 404(b) provides in relevant part that:

Evidence of a crime, wrong, or other act is not admissible to prove a person's
character in order to show that on a particular occasion the person acted in
accordance with the character. . . . The evidence may be admissible for another
purpose, such as proving motive, opportunity, intent, preparation, plan,
knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b)(1)–(2).

kilograms of cocaine through brokered transactions with Smith. Austin also purchased approximately 2.30 to 3.06 kilograms of cocaine from Mitchell. Thus, pursuant to U.S.S.G. § 1B1.3(a)(1)(A) and (B), the probation officer concluded that Austin was accountable for 6.38 to 7.65 kilograms of cocaine, which resulted in a base offense level of 30, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(5).[2] Based on an offense level of 30 and a criminal history category of II, Austin's guideline range was 108 to 135 months' imprisonment, and the statutory maximum sentence was 30 years. Austin objected to the attributed drug amount, asserting that the base offense level should only be 22 because "the investigation [did] not show his conduct was part of a conspiracy," and, therefore, only the less than 500 grams the jury determined he possessed should be the amount attributed to him. In response, the probation officer explained that because Austin was found guilty of participating in a jointly undertaken criminal activity—here, conspiracy to distribute cocaine— under the Guidelines he was accountable for conduct that was: "within the scope of the jointly undertaken activity, in furtherance of the criminal activity, and reasonably foreseeable in connection with that criminal activity." And Carter testified that Austin bought cocaine from him through Young and Smith in 18-ounce increments on multiple occasions between 2013 and 2014.

---

[2] U.S.S.G. § 2D1.1(c)(5) provides a base offense level of 30 for a 21 U.S.C. § 841(b)(1)(C) offense involving at least 5 but less than 15 kilograms of cocaine.

These transactions were in furtherance of the drug conspiracy and were reasonably foreseeable because they were brokered on Austin's behalf. Accordingly, Austin was accountable for 6.38 to 7.65 kilograms of cocaine.

At sentencing, Austin reiterated his objection to the amount of cocaine attributed to him. He also argued that the transactions with Mitchell took place prior to the period covered by the indictment, and, therefore, he should not be held accountable for the 2.3 to 3.06 kilograms he bought from Mitchell. The government responded that the jury's determination of a defendant's drug quantity for the purposes of the statutory penalty did not affect the district court's determination of his drug quantity at sentencing and that, given the testimony at trial, the district court could attribute to Austin more than the 500 grams the jury found him guilty of possessing. The government also argued that even if the transactions with Mitchell occurred outside the window alleged in the indictment, those transactions could still be considered as relevant conduct for sentencing purposes. The district court overruled Austin's objections, adopted the PSI, and sentenced Austin to 125 months' imprisonment to be followed by 6 years of supervised release. This appeal followed.

## II.    Discussion

### A. The Rule 404(b) Evidence

Austin argues that the district court abused its discretion when it admitted evidence of his 1992 Georgia conviction for two counts of sale of cocaine because the prejudicial effect far outweighed any probative value.[3]  In response, the government concedes that the admission of the 1992 conviction was an abuse of discretion, but contends that the error was harmless.[4]

"[We] review[] a district court's evidentiary rulings for a clear abuse of discretion."  *United States v. Dodds*, 347 F.3d 893, 897 (11th Cir. 2003).  "Even if an evidentiary ruling is erroneous, 'that ruling will result in reversal only if the error was not harmless.'"  *United States v. Khanani*, 502 F.3d 1281, 1292 (11th Cir. 2007) (alteration adopted) (quoting *United States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999)).  Thus, "where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict, reversal is not warranted."  *United States v. Drury*, 396 F.3d 1303, 1315 (11th Cir. 2005) (quoting *United States v. Hawkins*, 905 F.2d 1489, 1493 (11th Cir. 1990)).

---

[3] Austin also generally argues that this Circuit's standard for admissibility of other acts evidence under Rule 404(b) is too broad and urges this Court to adopt a narrower standard used in other Circuits.  We decline to address this argument.

[4] In light of the government's concession, for purposes of this appeal, we will assume without deciding that the admission of this evidence was an abuse of discretion and conduct a harmless error analysis.

Here, as an initial matter, the risk of any unfair prejudice from the admission of Austin's 1992 conviction was reduced by the district court's limiting instruction to the jury. *See United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993) ("While the probative value and government need for this [Rule 404(b)] evidence were strong, any unfair prejudice possibly caused by its introduction was mitigated by the trial judge's limiting instructions."); *see also United States v. Ramirez*, 426 F.3d 1344, 1354 (11th Cir. 2005) (noting that the risk of prejudice from Rule 404(b) evidence can be mitigated by a limiting instruction). Additionally, even without the 1992 conviction, sufficient evidence uninfected by error supported the jury's guilty verdict, as law enforcement and Austin's co-conspirators testified that he was placed at locations where drug deals took place, purchased cocaine at those locations on multiple occasions, and cooked and sold crack cocaine. Accordingly, any error in the admission of Austin's 1992 conviction was harmless. *See Drury*, 396 F.3d at 1315. Therefore, we affirm Austin's conviction for conspiracy to distribute cocaine and cocaine base.

**B. Sentencing Challenge**

Austin argues that the district court erred at sentencing when it attributed over five kilograms of cocaine to him and failed to make an "explicit factual finding as to the allegation." Therefore, he maintains that he must be resentenced

8

using the jury's determination that he was responsible for less than 500 grams of cocaine.

"The district court's determination of the drug quantity attributable to a defendant is reviewed for clear error." *United States v. Chavez*, 584 F.3d 1354, 1367 (11th Cir. 2009). "A finding is clearly erroneous where, after reviewing all the evidence, we are 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Alicea*, 875 F.3d 606, 608 (11th Cir. 2017) (quoting *United States v. Robertson*, 493 F.3d 1322, 1330 (11th Cir. 2007)).

"When a defendant objects to a factual finding that is used in calculating his guideline sentence, such as drug amount, the government bears the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). "The district court's factual findings for purposes of sentencing may be based on, among other things, evidence heard during trial, undisputed statements in the PSI, or evidence presented during the sentencing hearing." *United States v. Polar*, 369 F.3d 1248, 1255 (11th Cir. 2004). Although, "a district court should make explicit factual findings that underpin its sentencing decision[,]" the failure to make specific findings does not preclude appellate review or warrant reversal "where the court's decisions are based on clearly identifiable evidence." *United States v. Bradley*, 644 F.3d 1213, 1293 (11th Cir. 2011).

Here, the district court did not err in attributing more than 500 grams of cocaine to Austin for purposes of calculating his guideline range. The Guidelines instruct district courts to consider not merely the charged conduct, but rather all "relevant conduct," in calculating a defendant's guideline range. U.S.S.G. § 1B1.3. Therefore, "sentencing courts may consider both uncharged and acquitted conduct in determining the appropriate sentence." *United States v. Hasson*, 333 F.3d 1264, 1279 n.19 (11th Cir. 2003). Thus, when determining the quantity of drugs attributable to the defendant for sentencing purposes,

> the defendant is accountable . . . for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity . . . all quantities of contraband that were involved in transactions carried out by other participants, if those transactions were within the scope of, and in furtherance of, the jointly undertaken criminal activity and were reasonably foreseeable in connection with that criminal activity.

U.S.S.G. § 1B1.3, cmt. (n.3(D)). Here, the district court determined Austin was accountable for cocaine he purchased from Carter and Mitchell, albeit uncharged or acquitted conduct. This conduct was clearly relevant under U.S.S.G. § 1B1.3 because it was quantities of cocaine "with which [Austin] was directly involved." *Id.* Although Austin argues that the district court failed to make an explicit factual finding regarding the amount attributable to him, his argument is belied by the record as the district court expressly overruled his objection to the amount of cocaine attributed to him, found the challenged conduct to be "relevant," and

10

adopted the PSI, which stated that the amount of cocaine attributable to Austin was based on trial testimony.  Accordingly, the district court's factual finding was not clearly erroneous.  *See Alicea*, 875 F.3d at 608; *Bradley*, 644 F.3d at 1293.  We affirm Austin's sentence.

**AFFIRMED.**